No. 58.

## WAINRIGHT v. BURROUGHS ET AL.

VERDICT.—*Failure to Assess Damages in Special Verdict.—Venire de Novo.*— In a special verdict the jury must assess the damages, and a failure to do so is cause for a *venire de novo;* but it is not necessary that the damages be stated in the formal ending of the verdict; and it is sufficient if the court can ascertain them by a mere computation from the facts found.

SAME.—*Sufficiency of Special Verdict.*—A special verdict should leave to the decision of the court only questions of law.

SAME.—*Failure to Find a Fact.*—If any fact is· not found, the verdict will be construed as a finding to that extent against the party having the burden of proof as to such fact; and the court will not intend any fact not found by the jury.

GUARDIAN AND WARD.—*Degree of Care.—Presumption Against.*—The degree of care and prudence required of a guardian, acting without fraud in the affairs of his trust, is not higher than that which an ordinarily prudent man exercises in his own affairs of a like nature. In such an instance there is no presumption against the guardian of improper conduct.

From the Hamilton Circuit Court.

*T. J. Kane* and *T. P. Davis*, for appellant.

*W. Booth*, for appellees.

BLACK, C. J.—The appellees, Emma, Frances, Nellie and James Burroughs, by James Burroughs, Sr., as their next friend, and Elvira Smith, sued the appellant, who answered by general denial.

The cause was tried by jury, and a special verdict was rendered. The appellees moved for judgment on the special verdict, and also moved for a new trial. The motion for judgment was overruled, and that for a new trial was sustained. On the second trial, the jury returned a special verdict, and both parties moved for judgment thereon. The motion of the appellant was overruled and that of the appellees was sustained.

In the second verdict the jury found, in substance, that on the 26th day of April, 1882, the appellant was appointed

as guardian of Evaline, Emma, Frances, Nellie and James Burroughs, by the clerk of the Hamilton Circuit Court; that the only estate of said wards consisted of $36 cash, an undivided interest in certain lands, which said guardian sold, under proper order of court, for $91, and the undivided five-sevenths part in value of the west half of two town lots described, which, in 1880, had been sold for delinquent taxes; that in proper proceedings in the Hamilton Circuit Court the lien for such taxes was fixed and established on the 10th of May, 1882, at $205.88, and costs of suit amounting to $20, and said court then ordered that in the event that said property was not redeemed by the payment of said sum, interest and costs, within six months thereafter, it should be sold by the sheriff to satisfy said lien, from which sale there should be no redemption; that there was also delinquent corporation tax to the amount of $55; that the remaining undivided two-sevenths part of said town property was owned by Kansas Burroughs and Viola Burroughs, adult brother and sister of said wards; that said sum of $36 was paid to said guardian on the day of his appointment, out of which he paid an attorney, named, $15 for services; that on the 21st of August, 1882, he received ninety-one dollars, above mentioned, and paid costs, amounting to $17.19; that on the day last mentioned said Viola gave him $18.21, to be used in redeeming said town property from said tax-lien, in the event he should obtain sufficient money to make such redemption, and the money so received from her was returned to her in July, 1883; that said sums of $36, and $91, were the only sums of money belonging to said wards that ever came into the hands of said guardian; and said sum of $18.21 was the only additional amount ever paid him by any one with which to redeem said real estate; that including said sum of $18.21, and after deducting said sum of $15 paid to the attorney, and said sum of $17.19 paid on costs, the largest amount ever in the hands of said guardian at any one time was the sum of $113.09; that said tax-lien was not

paid; that said adult brother and sister did not, nor did either
of them, pay any part of said lien, or redeem any part of said
property; that a certified copy of said decree was issued,
and, on the 17th of February, 1883, the whole of said prop-
erty was duly sold by the sheriff to satisfy said lien for
$250.46, then the amount thereof, to Mr. Shirts, to whom a
deed was executed pursuant to said sale; that this did not
include corporation tax; that between May 10th, 1882, and
February 17th, 1883, the undivided five-sevenths part of
said town property was of the reasonable and fair cash mar-
ket value of $350; that during all said time said property
was occupied as a home by said wards and their father and
the members of his family; that the father was insolvent
and paid no rent to the guardian or any of said children;
that after said sheriff's sale and the execution of said deed to
said Shirts, the said Burroughs family continued to live in
said property, and said guardian, under order of said court,
paid the balance of the funds in his hands belonging to said
wards (except $11.97, paid to Eva Burroughs, and $8, re-
tained for services) to said Shirts, as rent for said property
after said sale, as a home for his said wards; that he did not
make application or obtain any order for the sale of the un-
divided interest of his wards in said real estate; that he en-
deavored to find a purchaser for the property at a price in
excess of said tax liens, and that he failed to find any such
purchaser, and therefore made no application to court for
authority to sell the same; that there was no fraudulent
combination or collusion between said guardian and said
Shirts, or any one else, to acquire said property or defraud
said wards; that neither said Kansas Burroughs nor Viola
Burroughs, who were of full age, each having the same in-
terest that each of said wards had in said property, sold or
realized anything out of their respective interests therein,
although they had the same opportunity to look after their
interests that said guardian had to look after the interests
of his wards; that the only benefit or compensation said

guardian received out of or through said guardianship was said sum of $8 for services. Thereupon the special verdict concluded as follows:

" If, upon the foregoing facts, the law is with the plaintiff, then we find for the plaintiff; and if the law thereon is with the defendant, then we find for the defendant."

Upon this verdict the court rendered judgment for the appellees for fifty dollars.

There is some want of agreement between the complaint and the verdict in respect to the names of the appellant's wards. The verdict does not indicate what interest the appellee Elvira Smith has in the action.

It does not appear either in the pleadings or in the verdict that the guardianship has ended. No suggestion has been made before us as to the right of the wards to institute such an action against their guardian before the termination of the guardianship, and we do not find it necessary to decide that question.

At common law, the rule that the jury must assess the damages was applicable to a special verdict as well as to a general verdict. *Kynaston* v. *Mayor*, etc., 2 Stra. 1052.

The failure of the jury to assess damages was ground for a *venire de novo* at common law. *Kynaston* v. *Mayor*, etc., *supra*. And it is so also under the code. *Brickley* v. *Weghorn*, 71 Ind. 497.

It may not be necessary that damages shall be stated always in the formal ending of the special verdict, but if they be not so stated the verdict should leave nothing for the court in the ascertainment of the damages further than mere computation from the facts found by the jury. A special verdict should leave to the decision of the court only questions of law. The assessment of damages has always been peculiarly within the province of a jury.

Our code (section 548, R. S. 1881) provides: " In actions for the recovery of money, the jury must assess the amount of the recovery." This provision is not restricted to general

verdicts, but is applicable also to special verdicts. See *Mitchell* v. *Geisendorff*, 44 Ind. 358.

Counsel for appellant say in their brief: "We have never known, and do not know now, on what theory judgment was rendered against appellant for fifty dollars and costs. We can not find any basis for it in the verdict."

If the court had arrived at the amount of the judgment by deducting from the estimated value of the town property the amount of the tax-lien fixed by the decree and the costs of the suit in which the decree was entered, the judgment would have been for $124.12. If the corporation tax also were deducted, the judgment would have been for $69.12. If the amount of the judgment had been calculated by deducting from the estimated value of the property the amount for which it sold under the decree, the judgment would have been for $99.54. If the corporation tax also were deducted, the judgment would have been for $44.54.

It would seem that the court exercised the function of a jury by assessing the damages. But this action of the court in the rendition of the judgment was not questioned by any motion in the trial court, and we regard the verdict, considered in connection with the complaint, as sufficient to authorize a judgment thereon in favor of the appellant, and as not sufficient to support the judgment for the appellees.

It was alleged in the complaint that said town property was worth twelve hundred dollars, and had a rental value of seventy-five dollars a year; that during all of the six months before the sale of the property under the decree, the guardian negligently, carelessly, knowingly and wilfully stood still and did nothing toward paying off said tax-lien or judgment, of which he had full knowledge, and so negligently, wilfully and fraudulently combined and confederated with said Shirts "for the purpose of, and thereby permitted and allowed said town property to be conveyed from his said wards to said Shirts, as aforesaid."

It was also alleged that soon after the appointment of the

guardian, and before the expiration of said six months, " the plaintiff Elvira and the father of said plaintiffs, and said Kansas and Emeline Burroughs, went to said Wainwright and offered to pay him the sum of seventy-five dollars, and an additional sum, if necessary, for the purpose of paying off said tax-lien on said property, and insisted on him taking some steps to redeem said property from said lien, and save the same for his wards; but all of which he refused to accept or take any steps to redeem the same;" that he could have sold one of the lots for one hundred dollars by order of the court, and could have collected rents during said six months in the sum of twenty-five dollars, to apply on said lien; that at the date of his appointment he received one hundred and twenty-seven dollars, money of his wards, and soon afterwards eighteen dollars, paid him by " the plaintiff Elvira," for the purpose of redeeming said property; that he could have used of his own funds the balance necessary, and could have reimbursed himself, and could have obtained an order of court, and could have borrowed the necessary balance, and could have mortgaged said property to secure the payment, and could have paid the balance of said lien, all of which he refused to do, though often requested.

The court, in making its conclusions upon a special verdict, will not intend any fact not found by the jury; and if any material fact be not found, the verdict will be construed as a finding to that extent against the party having the burden of proof as to such fact.

The jury expressly found that there was no fraudulent combination or collusion between the guardian and the purchaser of the property, or any one else, to acquire the property or defraud the wards. The verdict also shows that the guardian never had in his possession enough money belonging to his wards to redeem the property, or their share thereof. The rental value of the property is not shown by the verdict. It is shown that it was the home of his wards and their father and his family, and that the father was insolvent. It

appears that after the title had passed by the sale, the court authorized the guardian to pay rent for the property to provide a home for the wards. We can not say that it was his duty to turn them out of their home before the sale, especially as it does not appear by the verdict that by letting it to rent he could have derived any increase of the funds for its redemption.

It does not appear from the verdict that the father of the wards and other members of the family, or any of them, or any other person, offered to pay the guardian any sum whatever for the purpose of redeeming the property, except that one of the members of the family gave him $18.21 to be used for such purpose if he should obtain enough additional funds for such purpose.

It does not appear from the verdict that the guardian could have sold one of the lots for one hundred dollars, or for any sum, or that he could have mortgaged the undivided interests of his wards. It is not shown that he could have been reimbursed for the use of his own funds, if that would have imposed upon him the duty of advancing his own money for such a purpose. See *Stumph* v. *Gœpper,* 76 Ind. 323.

It is found by the jury that the reasonable, fair and cash market value of the undivided interest of the wards in the town property was three hundred and fifty dollars, and that he did not make application or obtain any order for the sale of said undivided interest ; but it is found that he endeavored to find a purchaser for the property at a price in excess of the tax-liens, and that he failed to find any such purchaser, and therefore made no application to court for authority to sell the property.

This does not sustain the allegation that the guardian negligently, carelessly, knowingly, and wilfully stood still and did nothing toward paying off the tax-lien or judgment. No intendment can be made in favor of the party having the burden of proof. Instead of negligent or wilful *standing*

still and doing nothing, the verdict shows an endeavor to find a purchaser, which, for the purposes of the case, must be taken as having been made in good faith, and to an extent commensurate with his duty. His failure to find a purchaser is stated as an excuse for his failure to make an application for authority to sell. It does not affirmatively appear that he had reasonable ground for incurring the expense and costs of a proceeding to sell the undivided share of his wards in the property, or that he could thereby have saved anything to their estate.

No presumption could be indulged against the guardian (*Wainwright* v. *Smith,* 106 Ind. 239), and the burden was upon the plaintiffs. The degree of care and prudence required of a guardian, acting without fraud in the affairs of his trust, is not higher than that which an ordinarily prudent man exercises in his own affairs of a like nature. *Slauter* v. *Favorite,* 107 Ind. 291.

The special verdict does not show affirmatively or by necessary implication that the appellant failed to exercise such a degree of care and prudence, much less that he wilfully sacrificed their estate.

We are of opinion that the court erred in sustaining the motion of the appellees for judgment on the verdict and in overruling the motion of the appellant for judgment thereon.

The appellees have assigned cross-errors, based upon the action of the court, first, in overruling their motion for judgment upon the first special verdict, and, second, in assessing the amount of recovery on the second special verdict, in that the amount is too small.

The first special verdict differed in no material respect from the second, and the appellees were not entitled to judgment for any amount on either verdict.

The judgment is reversed, with costs, and the cause is remanded, with instructions to proceed in accordance with this opinion.

Filed May 14, 1891.