No. 10,660.

## SHUEY, ADMINISTRATOR, v. LATTA.

MORTGAGE.—*Extension of Time.—Lien.*—Neither an extension of the time of payment nor a change in the form of the indebtedness secured by a mortgage impairs the mortgage lien.

TRUST AND TRUSTEE.—*Mortgage.—Investment of Funds.—Care Required.*—A trustee to invest funds must seek safe investments, and, as a general rule, a second mortgage is not a safe investment.

SAME.—*Liens.—Priority.—Notice.—Assignor and Assignee.*—If a trustee invest trust funds in a mortgage upon lands upon which he personally holds a mortgage of older date, he violates his duty; and equity will give priority to the mortgage taken as trustee, against an assignee of the first mortgage with actual or constructive notice.

SAME.—A trustee mortgagee, whose mortgage is a senior lien on land, can not be deprived of such lien merely because he may have a right to make the debt out of a bond executed by his predecessor in the trust by virtue of which the mortgage came to him.

SAME.—A purchaser of an interest in lands, burdened with an equity in favor of a trust of which he has actual or constructive notice, holds subject to the trust.

From the Elkhart Circuit Court.

*J. M. Vanfleet*, for appellant.

*W. L. Storey, J. S. Drake* and *F. D. Merritt*, for appellee.

ELLIOTT, J.—Elias and John Gortner, on December 24th, 1869, executed a mortgage (recorded September 24th, 1870,) to Joseph H. Defrees, president of the First National Bank of Goshen; this mortgage was afterwards assigned to George D. Copeland. Afterwards Copeland became the administrator, with the will annexed, of the estate of one Beebe; the will of the decedent directed that the money of the estate should be loaned, and the interest received paid to his widow during her life, and on January 30th, 1873, the administrator loaned to the Gortners $2,000, and as security took a mortgage on the land embraced in the mortgage of which he was the owner by assignment, and also on another parcel. The appellee, Mary Latta, without actual notice, after maturity, and for a full consideration, on September 1st, 1873, purchased the mortgage owned by Copeland. The land covered by the mortgage to Copeland as

administrator, but not by that executed to him individually, was exhausted in the payment of a prior lien, so that the land covered by the first mortgage is the only remaining security; Shuey succeeded Copeland as administrator of Beebe's estate, and in April, 1880, agreed with the Gortners that the time of payment of the debt due the estate which he represented should be extended for six months; the property here in controversy was worth at the time the mortgage was executed $25,000, and the Gortners were considered solvent, but in May, 1881, a fire destroyed the buildings, leaving only the land, and diminishing the value of the property to $1,200; Copeland's bond as administrator was good, and he and his sureties were able to pay the full amount claimed at the time he was discharged from his trust.

The fact that Shuey extended the time of the payment did not release the mortgage lien held by him, nor did it take from it any priority of right which it may have possessed. A change in the form of the indebtedness secured by a mortgage does not impair the mortgage lien. Jones Mortg., section 924; *McCormick* v. *Digby*, 8 Blackf. 99; *Dumell* v. *Terstegge*, 23 Ind. 397; *People's, etc., Bank* v. *Finney*, 63 Ind. 460; *Bodkin* v. *Merit*, 86 Ind. 560. If the mortgage executed to Copeland as administrator was the prior one, then no renewal or extension of time could transform it into a junior one.

A mortgagee having a senior lien on land can not be deprived of his seniority merely because he may have a right to make the debt out of a bond executed by his predecessor in the trust by virtue of which the mortgage came to him. The fact, if such it be, that Shuey might have made the debt off of Copeland and his sureties furnishes no reason for declaring that the order of priority in the two mortgages should be changed. If the lien of the trust mortgage was in reality the paramount one, it could not be affected by the fact that Copeland was liable on his bond for breach of duty. There is no equity in this claim, for it would be unjust to compel mere sureties to bear the loss, even if there were a cold legal right against them, which is not so

clear.   We say that it is not clear that there was a legal right against the sureties, for the reason that if the effect of the principal's act was to displace the lien of his individual mortgage in favor of the one executed to him as administrator, then there was really no injury to the trust estate.  It is, at all events, much more equitable that Copeland should bear the loss than that it should be cast upon the sureties on his bond.

Copeland was more than a mere administrator exercising bare statutory powers.  He was a trustee.  The provision in the will, directing the representative of the decedent to lend the money for the benefit of the widow, constituted the administrator the trustee, and the widow the *cestui que trust.*   *Coburn* v. *Anderson,* 131 Mass. 513 ;  *Marx* v. *McGlynn,* 88 N. Y. 357.  One who accepts a trust created by a will is more than an administrator under the law ;  he is in the strictest sense a trustee, and subject to the rules governing trustees.

A trustee is required to give to the business of the trust his disinterested zeal, skill and attention, and is bound to do no act that will bring his individual interests in conflict with those of the *cestui que trust.*  He must not allow his individual interests to directly or indirectly influence him adversely, and all that he does in the execution of the trust must be for the promotion of the interests of the beneficiary.   Investments of trust funds must be made with a view to the good of the beneficiary and for no other purpose ; they must not be made to favor friends nor to promote individual interests, but they must be made so that the full benefit shall go where the creator of the trust directed.   Safe investments must be sought, and the general rule is that a mortgage on real estate encumbered by prior liens is not a safe investment.   In *Mills* v. *Hoffman,* 26 Hun, 594, it was said :  " From our examination of the authorities and the cases referred to, we have come to the conclusion that as a general rule it is the duty of trustees to invest funds held by them, in government or State securities, or in bonds and mortgages on unincumbered real estate."   It is said in *Whitney* v. *Martine,* 88·N. Y. 535, that the right of

an agent to advance money on a security not of the first-class may well be questioned, and that a second mortgage is not a first-class investment. In *Gilmore* v. *Tuttle*, 32 N. J. Eq. 611, the general doctrine that investments in second mortgages are not proper ones is recognized, and the trustee was held liable for loss resulting from such an investment. That case is a strong one, for the deed of trust contained a provision that the trustee should only be liable for his " own wilful and intentional breaches of the trust." In *Norris* v. *Wright*, 14 Beavan, 291, the Master of the Rolls said : " I beg, however, that it may not be understood that I sanction the propriety of trustees lending money on a second mortgage, when they do not get the legal estate." It was said in *Thomson* v. *Christie*, 1 Macqueen App. Cas. 236, by the Lord Chancellor : " This money was secured by what we should call a second mortgage upon the property, and a gentleman named Alison joined in a bond with seisin as security for the amount which was so advanced. That this would have been an improper security by the law of England is beyond all question." There is good reason for this rule. If trustees were permitted to take second mortgages, the trust fund would often be lost because of the inability to redeem from the prior encumbrance. Take a case like this, where the whole fund is loaned on a second mortgage, and loss is almost certain to follow, for the trust estate has nothing with which to redeem. It is only necessary for us to decide that the general rule is that trustees should not take second mortgages ; it is not necessary to declare that this is an invariable rule. It may be that the rule should not be held to be applicable to every case, and we do not so adjudge, but we do adjudge that it does apply where the trustee himself holds the prior mortgage. To permit him to take a second mortgage to secure trust funds would be to allow him to place himself in a position hostile to his beneficiary ; for, if he demanded the whole property on the prior lien, he would be in the position of forcing the beneficiary either to redeem or lose the property ; if he elected as trustee

to redeem, it would enable him to use trust funds in payment of his own demands. It is easy to see that such a practice would result in wrong and injustice, and full as easy to see that it is opposed to settled principles of equity jurisprudence.

It was the duty of the trustee to take a first mortgage, and "equity considers that as done which ought to have been done." We hold, in the interest of equity and justice, that we must consider Copeland to have done that which it was his duty to do, and this carries us to the conclusion that the mortgage taken by him in his trust capacity constitutes the prior lien.

A purchaser of an interest in land burdened with an equity in favor of a trust, of which he has actual or constructive notice, holds subject to the trust; and in this case the appellee's assignor had all the knowledge that one could possibly acquire. This weakness of the assignor's title affects the assignee, for she bought a note and mortgage long past due. If she had bought commercial paper before maturity, a different question would have faced us.

Judgment reversed.