No. 11,662.

## SLAUTER v. FAVORITE, GUARDIAN.

GUARDIAN AND WARD.—*Degree of Care Required of Guardian.*—A guardian is only required to exercise that degree of care and prudence in managing the money of his ward, which an ordinarily prudent man employs in his own affairs.

Slauter *v.* Favorite, Guardian.

SAME.—*Investment.—Mortgage.—Liability for Loss.—Fraud.*—Where a guardian acts in good faith and with reasonable diligence in taking a mortgage, believing it to be a senior lien, as security for a loan of his ward's money, he can not be held liable for a loss solely on the ground that such mortgage was made a junior one by the fraud of the mortgagor.

SAME.—*Relying on Statements of Borrower.—Negligence.*—Ten days before loaning money of his ward, a guardian examined the records and found the land offered as a security to be free from encumbrances. The borrower owned property worth many thousand dollars more than the amount of the loan. He was a business man of excellent credit and standing, and it was not known that he was in debt. At the time the mortgage was executed, the borrower told the guardian that the land was unencumbered, but he had in fact in the meantime mortgaged it to a third person.

*Held*, that the guardian was not guilty of negligence in relying upon the statement of the borrower.

SAME.—*Taking Mortgage Executed by Husband Alone.—Measure of Damages.—Burden of Proof.*—Where a guardian accepts a mortgage executed by the husband alone, the burden is on him to show that the husband's estate in the land is an adequate security for the money loaned; and if such fact be not shown, he will be deemed negligent in not requiring the wife to join in the execution of the mortgage, and held liable for the resulting loss, *i. e.*, the value of the wife's interest in the land.

SAME.—*Final Report.—Representations.—Concealment.—Fraud.*—A guardian who, in making his final settlement report on resignation of his trust, represents that an uncollected note, taken for a loan of his ward's money, is of its full face value, concealing the fact that the maker has become insolvent, is guilty of fraud.

SAME.—*Taking Note in Individual Name.*—The fact that a guardian has taken a note for his ward's money in his individual name, without any designation of his official character, may be considered, with other facts, in support of a finding of fraud.

SAME.—*Special Finding.—Absence of Epithets.—Practice.*—Where the facts specially found enable the court to pronounce the proper judgment, the absence of the epithets "fraud" and "negligence" is immaterial.

PRACTICE.—*Special Finding.—When Error in Conclusion of Law not Available.*—If the ultimate judgment is right and is sustained by the special finding of facts, an error in one of the conclusions of law will not justify a reversal.

From the Fountain Circuit Court.

*J. McCabe, C. M. McCabe* and *E. F. McCabe,* for appellant.
*W. C. Wilson* and *J. H. Adams,* for appellee.

ELLIOTT, J.—The material facts contained in the special finding, stated in an abridged form, are these : The appellant was the guardian of Jennie B. and Fannie E. Hollowell, and while holding that trust lent twenty-one hundred dollars of the money of his wards to Wilson T. Moore. To secure this loan Moore executed to the appellant a promissory note and a mortgage conveying eighty acres of land, but in neither of these instruments was the appellant described as guardian, nor was the mortgage signed by Moore's wife. At the time the loan was made Moore lived thirty miles distant from the city of Attica, where the appellant resided; he was well known in "business circles, his financial standing and credit was excellent," and he had property, real and personal, of the value of twelve to fifteen thousand dollars, but he was at that time greatly in debt; this fact was, however, not known to the appellant, nor was it generally known. Ten days prior to the time the loan was made, the appellant examined the title to the land which Moore proposed to mortgage, and which he did afterwards mortgage, and found that there were no encumbrances. After the title had been examined by the appellant, Moore borrowed four thousand dollars from an insurance company, and executed a mortgage to the company to secure the loan on the land described in the mortgage executed to the appellant. The mortgage for the four thousand dollars was executed on the 1st day of October, 1873, that to the appellant on the 8th day of that month, and the four thousand dollar mortgage was recorded on the 4th day of the same month. Moore informed the appellant at the time he executed the mortgage to him, that there was no encumbrance on the land, and the former believed that the mortgage executed to him was the prior one. The land covered by the mortgage was worth twenty-four hundred dollars, and two hundred dollars of the mortgage debt was subsequently paid by Moore. On the 27th day of May, 1875, Moore became notoriously insolvent, and made an assignment for the benefit of creditors, and was openly and notoriously insolvent

when the appellant made his final settlement as guardian and resigned his trust on the 7th day of June, 1875. When that settlement was made the note executed by Moore remained uncollected, and was by the appellant in his final report represented to the court as being secured by mortgage, and as being of the full face value. The appellant withheld from the court the information that Moore was then entirely insolvent, and that the mortgage securing the payment of the note was a second mortgage, and was not sufficient security. Upon the representation in the final report as to the value of the note and the sufficiency of the security, the report was accepted and approved by the court. The mortgage was not a sufficient security for the loan, and the note was not worth its face. At the time the report was filed the appellant had no actual knowledge that the mortgage executed to him was junior to that executed on the 1st day of October, 1873, but after the report was filed suit was brought to foreclose that mortgage, to which he was made a party. No other representations were made than those contained in the final report. The court stated the following conclusions of law:

" 1st. That the defendant was guilty of negligence in loaning the twenty-one hundred dollars of his wards' money to Wilson T. Moore, and in failing to properly secure said loan.

" 2d. That the defendant was guilty of fraud in representing to the court that the note taken by him from Wilson T. Moore was secured by mortgage on real estate, and failing to state the facts of the insolvency of Moore, and that the mortgage was a second mortgage."

The case as presented by the first conclusion of law is a hard one wherever the loss falls, whether upon the guardian or upon his wards, since the guardian was not guilty of any positive wrong, but acted in good faith, and his wards took no part, and, indeed, could take none, in the transaction which resulted in the loss of their money. Guardians must be held to exercise care and prudence in managing and investing the money of their wards, and lax rules upon this

subject would lead to grave abuses and wrongs, but, on the other hand, guardians are not insurers of the safety of investments made by them, nor should they be held to an extraordinary degree of care, for to require that high degree of care would deter prudent men from undertaking the trust, and thus compel the courts to appoint incompetent or unworthy men to manage the persons and estates of infants. The interests of infants placed under guardianship would suffer quite as much from a rule too exacting and strict as from one too lax and liberal. The degree of care and prudence required of the guardian ought not to be higher than such as an ordinarily prudent man employs in his own affairs, and this is the degree which the law requires. An American writer says: " So far as the guardian acts within the scope of his powers he is bound only to the observance of fidelity, and such diligence and prudence as men display in the ordinary affairs of life." Schouler Domestic Relations, section 348. At another place this author says, in speaking of the guardian: "And to make him liable in ordinary cases, beyond the limits of good faith and a sound discretion, would be intolerable." In *Lovell* v. *Minot*, 20 Pick. 116, it was held that a guardian acting in good faith was liable only in the case of a failure to exercise a sound discretion, and Chief Justice SHAW, by whom the opinion of the court was delivered, said: " The rule was well laid down in *Harvard College* v. *Amory*, 9 Pick. 461, that 'all that can be required in such cases is, that the trustee shall conduct himself faithfully, and exercise a sound discretion;' and by this rule the court are of opinion, that the present case must be governed." The general subject received careful consideration in *Jones' Appeal*, 8 Watts & Serg. 143 (42 Am. Dec. 282), where it was said by GIBSON, C. J., that, " Where the property is small, plain country farmers unversed in legal niceties are generally prevailed on by the friends to take charge of it, and from these justice requires no more than a reasonable degree of vigilance ex-

ercised in good faith. It certainly does not require that the office of a guardian should be a trap for the simple."

The quotations we have made reflect the views of the courts. upon this subject, and among other courts that share these views is our own. *Marquess* v. *La Baw,* 82 Ind. 550, see p. 553; *Sanders* v. *State, ex rel.,* 49 Ind. 228; *Norwood* v. *Harness,* 98 Ind. 134 (49 Am. R. 739).

Where a guardian accepts a mortgage as security for a loan of his ward's money, it should, in all ordinary cases, be a first mortgage, for the guardian has no right to incur the peril caused by the existence of a prior mortgage, for it might readily happen that the estate of the ward could not furnish money to pay off the first mortgage, and in that event the security afforded by the second mortgage would be valueless. Second mortgages are precarious securities and guardians should not take them. *Shuey* v. *Latta,* 90 Ind. 136. But in this instance the guardian intended to take a first mortgage; it was for such a mortgage that he contracted, and such it was that he believed he was getting, nor did he actually know that it was not a first mortgage until after he had resigned his trust.

If the guardian acted in good faith and with reasonable diligence in taking the mortgage, he can not be held liable solely on the ground that the mortgage which he believed to be the senior one was made the junior one by the fraud of Moore, the mortgagor. The utmost care and prudence will not always guard against loss. In every loan that is negotiated there is some risk that no ordinary prudence or sagacity can avoid; in almost every case something must be trusted to the borrower's honesty. There are few cases, indeed, where one who lends money upon real estate security is not compelled to rely, to some extent, upon the statements of the mortgagor that there are no unrecorded mortgages, and the question upon this particular phase of the case narrows to this, was the guardian negligent in relying upon the statements of the mortgagor that there were no encumbrances on

the land? In our opinion he was not. The safer course for the guardian is to rely upon the record, and not upon the statements of the borrower, but the most prudent business men often act upon the representations of the borrower, and in many cases must necessarily do so. A guardian is bound to do no more than a reasonably prudent man would do under like circumstances. There are cases, therefore, where the guardian may trust to the statements of the borrower, and this is one of them.. Here the guardian had examined the record within ten days; the result of the examination corroborated the statements of Moore; the property owned by the latter was valued at fifteen thousand dollars; he was a business man of excellent credit and standing, and it was not known that he was in debt, so that the case presented is not that of carelessly trusting a man without credit, property or standing, for here the borrower was worth more than five times the amount of the sum lent him, and was an active business man of excellent reputation.

Negotiations for loans are often in progress several days before they are concluded, and the lender is not always to be regarded as negligent unless he keeps watch upon the records to the last day or the last hour on which the negotiations are concluded. There may be cases where such great vigilance is required, but there are cases where it is not exacted, and this case belongs to the latter class. There are adjudged cases going much further than we are required to do here, among them *Ferguson* v. *Lowery*, 54 Ala. 510 (25 Am. R. 718), *Parsley* v. *Martin*, 77 Va. 376 (46 Am. R. 733), *Estate of Ada Worrell*, 14 Phila. R. 311, *Neff's Appeal*, 57 Pa. St. 91.

The safest and most prudent course for a guardian to pursue, in making an investment of his ward's money in real estate security, is to require the wife of the mortgagor to join in executing the mortgage, and it is hazardous for him to pursue any other course; but there may be cases where it would not be negligence for the guardian to accept a mortgage executed by the husband alone. It may often be that the interest of

the husband, exclusive of that of the wife, is amply sufficient to secure the investment, and in such a case it could not be justly held that the guardian was negligent in not requiring the wife to join in the execution of the mortgage. Where, however, the guardian accepts a mortgage executed by the husband alone, he must show that the husband's estate in the land was an adequate security for the money loaned. As the burden was on the guardian to show that fact affirmatively, and as the special finding does not show that the husband's interest was sufficient to secure the loan, nor show that the guardian made reasonable and diligent enquiry on that subject, we are of the opinion that the conclusion that he was negligent is correct. Although he was negligent in not securing the wife's signature to the mortgage, still, he ought not to be held liable beyond the extent of the loss resulting from that negligence, and the extent of that loss could not be more, at the utmost, than a sum equal to one-third of the value of the land. This is the only loss that could legitimately result from his negligence in failing to secure the wife's signature to the mortgage, and his liability should not be greater than the injury. We are inclined to the opinion that the first conclusion of law is broader than the facts warrant.

The second conclusion of law presents a question not entirely free from difficulty, but our opinion is that there is no error in it. A guardian is bound to make full disclosure to the court of his transactions, and the law requires of him the exercise of the utmost good faith. He must not conceal any material fact, nor untruthfully represent any matter to the court. 2 Pomeroy Eq. 902; *Kelaher* v. *McCahill*, 26 Hun, 148; *Klemp* v. *Winter*, 23 Kan. 699; *Favorite* v. *Slauter*, 79 Ind. 562; *Asher* v. *State, ex rel.*, 88 Ind. 215.

In *Jennings* v. *Kee*, 5 Ind. 257, the court said: " In all cases of delinquency and neglect, the courts will presume in favor of the ward and against the guardian, as strongly as the facts

will warrant." The special finding shows that the guardian represented the note to be of its full face value, and withheld from the court the information that Moore had become insolvent, and that the mortgage executed by him was a second one. It may possibly be that the fact that the guardian believed his mortgage to be the senior one, and had no actual notice of the execution of the four thousand dollar mortgage, will free his failure to communicate information to the court upon that point from the stain of fraud; but, however that may be, he was guilty of fraud in concealing the fact that the maker of the note had become insolvent, as well as in representing that the note was of full face value. It will not avail a guardian who makes a positive representation, that he did not know that it was untrue, for, even in ordinary cases where a man makes a representation for the purpose of inducing action upon the part of another, he may be guilty of fraud although he does not know that his representation is untrue. *Frenzel* v. *Miller*, 37 Ind. 1 (10 Am. R. 62); *Bethell* v. *Bethell*, 92 Ind. 318, see p. 327; *Roller* v. *Blair*, 96 Ind. 203; *West* v. *Wright*, 98 Ind. 335. But in cases such as the present, a duty rests upon the guardian to make no statement that he does not know to be true, and to conceal nothing materially affecting his trust, of which he has knowledge. The necessity for a strong and stern application of the rule to cases like this is obvious, for the court must act upon the statements of the guardian, and there is no adverse party to challenge their truth. If the statements are not true, the order of the court rests on the wrong of the party who made it, and he can take no advantage of his own wrong.

There is another fact appearing in the special findings which exerts an important influence upon the case; the guardian took the note payable to himself without any designation of his official character, and this fact, when considered in connection with the other facts, stated in the special finding, is sufficient to sustain the second conclusion of law stated by

the trial court.    There are, indeed, authorities that go so far as to hold that if a guardian takes a note payable to himself, he can not show that it was taken as an investment of his ward's money, and in case the maker becomes insolvent, the guardian must bear the loss.    *Knowlton* v. *Bradley*, 17 N. H. 458 (43 Am. Dec. 609, and note).    But we need not go so far in this case, for we need do no more than consider the fact under immediate mention in connection with the other facts stated in the special finding.

The second conclusion of law is the controlling one, and upon it the judgment below securely rests, and there would be no cause for reversal even if the first conclusion of law should be considered erroneous.    If the ultimate judgment deals justly with the parties, gives to each his legal rights and is sustained by the facts appearing in the special finding an error in one of the conclusions of law will not justify a reversal.    Our statute says that no judgment shall be reversed "where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below."    *Krug* v. *Davis*, 101 Ind. 75; *Platter* v. *Board, etc.*, 103 Ind. 360, see p. 385.    The second conclusion of law is warranted by the facts and fully sustains the judgment setting aside the appellant's final report.    That judgment does not, of course, settle or adjust all questions between the parties, but does adjudge that the final report should not stand.

The special finding states facts and not evidence, and in this respect is free from fault.    The absence of the epithets "negligence" and "fraud" does not impair the force of the facts stated by the court.    The law will infer the proper conclusion from the facts stated.    It is possible that there may be cases where it is necessary to expressly characterize an act as fraudulent or as negligent, but it is not necessary in such a case as this, for here the facts of themselves enable the court to pronounce the law and declare the legal consequences that result from the facts.    *Pittsburgh, etc., R. W. Co.* v. *Spencer,*

The Indiana Oolitic Limestone Co. *v.* The Louisville, N. A. & C. R'y Co.

98 Ind. 186; *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582; *Conner* v. *Citizens Street R. W. Co.,* 105 Ind. 62.

Judgment affirmed.

Filed Feb. 10, 1886; petition for a rehearing overruled Sept. 24, 1886.