ELEANOR E. GARDNER *vs.* BEACON TRUST COMPANY
& others.

Suffolk.   January 23, 1905. — January 2, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Equity Jurisdiction*, To recover property obtained by fraud.   *Bills and Notes.*
  *Guardian.*

If the owner of a mortgage and note long overdue, induced by fraudulent misrep-
resentations of an agent, assigns them to the agent who pledges them to a trust
company to secure money borrowed by him personally, and the trust company
takes the assignment in good faith for value and without notice of any fraud or
defect in title, the owner of the mortgage and note cannot maintain a suit in
equity against the trust company to compel their reassignment.

A guardian has authority to sell and transfer personal property of his ward with-
out obtaining a license from the Probate Court under the provisions of R. L.
c. 145, § 35.   That statute merely enables a guardian to apply for a license for
his own protection and that of his sureties if he chooses to do so.

MORTON, J.   This is a bill in equity brought by a minor, by
her next friend and guardian, to compel the defendant the
Beacon Trust Company to assign and deliver to her a mortgage
and the note thereby secured alleged to have been fraudulently
obtained from the plaintiff's guardian by one Edwin M. Thayer,
since deceased, and fraudulently assigned by him to the trust
company.   As to certain of the defendants the bill was dis-
missed, and a decree was entered in favor of the plaintiff
against the trust company and other defendants.   The case is
here on appeal by the trust company.   All of the evidence is
reported.

Briefly stated the facts are as follows: In January, 1903,
the plaintiff was the owner of a mortgage, and the note thereby
secured, for $1,500, on land in Quincy, given by the defendant
Brown to one Hattie L. Carr, and transferred by successive
assignments to the plaintiff.   Her mother, Mary E. Gardner
now Mary E. Wales, was her guardian.   The note and mortgage
had been long overdue.   By means of fraudulent misrepre-
sentations that the owner of the equity wished to pay off the
mortgage, Thayer obtained from the plaintiff's guardian an

assignment of the note and mortgage to himself, and subsequently assigned them to the trust company as security for a note of $2,000 for money borrowed by him of the company. The trust company took the assignment in good faith for value, and without any notice of Thayer's fraud or of any defect in his title, unless the fact that it took it when the note was overdue constituted such notice.

We assume in favor of the plaintiff that the fact that the note was secured by mortgage does not affect its character as an overdue negotiable instrument when taken by the trust company, although it is said in *Murphy* v. *Barnard*, 162 Mass. 72, 75, that there is a distinction between the purchase of ordinary commercial paper and that of notes known to be secured by a mortgage of real estate, though bought as negotiable paper. See *Fish* v. *French*, 15 Gray, 520 ; *Vinton* v. *King*, 4 Allen, 562 ; *Willcox* v. *Foster*, 132 Mass. 320 ; *Bacon* v. *Abbott*, 137 Mass. 397. But the note did not cease to be property or to be negotiable because overdue. *Baxter* v. *Little*, 6 Met. 7. *Fisher* v. *Leland*, 4 Cush. 456, 458. *Leavitt* v. *Putnam*, 3 Comstock, 494. And the question is, whether, assuming for the moment the validity of the transfer by the plaintiff's guardian to Thayer, which will be considered later, the fact that the note and mortgage were overdue when the trust company took them so affected its title as to postpone its right to that of the defrauded owner. The general rule is thus stated by Lord Herschel in *London Joint Stock Bank* v. *Simmons*, [1892] A. C. 201, 215: " The general rule of the law is, that where a person has obtained the property of another from one who is dealing with it without the authority of the true owner, no title is acquired as against that owner, even though full value be given, and the property be taken in the belief that an unquestionable title thereto is being obtained, unless the person taking it can show that the true owner has so acted as to mislead him into the belief that the person dealing with the property had authority to do so. If this can be shown, a good title is acquired by personal estoppel against the true owner." He then goes on to say that there is an exception in the case of negotiable instruments, manifestly meaning those not yet due, and that as to them, any person in possession of them can convey a good title even if acting in fraud of the true

owner. This is the only exception mentioned by him to the general rule which he lays down, and which would seem, therefore, to have been regarded by him as applying to overdue negotiable notes as well as to other property when circumstances brought them within it. Applying the rule thus laid down, or the rule that, where one of two innocent persons must suffer in consequence of the fraud of another, the loss must fall upon the one who by his trust and confidence has enabled the perpetrator of the fraud to commit it (*Easter* v. *Allen*, 8 Allen, 7 ; *McNeil* v. *Tenth National Bank*, 46 N. Y. 325), it would seem plain that the loss in this case should fall upon the plaintiff, unless the fact that the note and mortgage were overdue makes a difference. She had assigned the note and mortgage to Thayer by an instrument valid upon its face, and had delivered possession of them to him. As a consequence of her conduct he had possession of them as apparent owner with full dominion over the property which they represented. This apparent ownership was obtained from the guardian by Thayer's fraud, it is true ; but although that would have enabled her to avoid the transaction as between her and him so long as the note and mortgage remained in his hands, his apparent ownership was not affected thereby.

Does, then, the fact that the note and mortgage were overdue when the trust company took them make a difference? The purchaser of an overdue negotiable note takes it subject to all the equities, if any there are, attached to it at the time of the transfer in favor of the maker, the owner, or of third parties. *Vinton* v. *King*, 4 Allen, 562. *Vermilye* v. *Adams Express Co.* 21 Wall. 138. *In re European Bank*, L. R. 5 Ch. 358. *In re Overend*, L. R. 6 Eq. 344. If there are no equities attached to the note the purchaser gets as good a title after as before maturity (*In re Overend, supra*, 360), and it makes no difference that the note is dishonored. If there are equities attached to it, he takes it subject to them. This is what is meant when it is said that the purchaser has no better title, legal or equitable, than his transferrer had, and that the note is subject in his hands to the same infirmities of title as against the true owner and to the same defences as against the maker which it was subject to in the hands of his transferrer. 1 Dan. Neg. Instr. (3d ed.) §§ 724

*et seq.* If for instance an overdue note is stolen from the owner, a subsequent purchaser acquires no title as against the true owner (*Vermilye* v. *Adams Express Co., supra*) ; if an overdue note has been paid by the maker and is fraudulently put in circulation by the payee, a purchaser, though for value and in good faith, takes it subject to the defence of payment by the maker. In such a case the very fact that the note is dishonored is sufficient to put the purchaser upon inquiry as against the maker. *Gold* v. *Eddy*, 1 Mass. 1. *Brown* v. *Davies*, 3 T. R. 80. *Losee* v. *Dunkin*, 7 Johns. 70. But the case is very different where the owner of an overdue note transfers it under circumstances which enable his transferee to deal with it though obtained by fraud as if he were the true owner, and when an innocent purchaser for value takes it from such transferee before the transfer has been avoided. In such a case no equity attaches to the note in favor of the true owner as against the innocent purchaser for value, since it was by his own act that the perpetrator of the fraud was enabled to commit it. The true owner of an overdue note may deal with it as with any other property, and the mere fact that the note is overdue does not in such a case, in the absence of anything in the transaction to suggest suspicion, put a purchaser upon inquiry any more than a purchaser is bound in any other case to inquire into the title of his vendor. See *White* v. *Dodge*, 187 Mass. 449. The possibility that the title may have been obtained by fraud exists in all cases. But that is not enough to put a purchaser upon inquiry. Any other view would put upon the innocent purchaser for value of overdue negotiable paper the onus of a defective title no matter how much he may have been misled by the conduct of the true owner. We do not think that such is the law. *Cochran* v. *Stewart*, 21 Minn. 435, 438, 440. *Moore* v. *Moore*, 112 Ind. 149. *Neuhoff* v. *O'Reilly*, 93 Mo. 164. *Etheridge* v. *Gallagher*, 55 Miss. 458. *Connell* v. *Bliss*, 52 Maine, 476. *Eversole* v. *Maull*, 50 Md. 95. Jones, Mortgages, § 841. Ames Cases on Trusts, (2d ed.) 310. In *Foley* v. *Smith*, 6 Wall. 492, the above principle was recognized, though it was held that the facts did not bring the case within it. So far therefore as the plaintiff relies upon the fact that the note and mortgage were overdue when taken by

the trust company, her contention must fail. The note being dated before January 1, 1899, the negotiable instruments act does not apply. See R. L. c. 73, § 211.

The plaintiff, relying upon R. L. c. 145, § 35, further contends that the guardian could not transfer the note and mortgage without a license from the Probate Court, which she did not have. That statute provides that upon the application of the guardian, or of any person interested in the estate of the ward, the Probate Court may authorize the guardian to sell and transfer any personal property held by him as guardian, and invest the proceeds in such manner as shall be most for the interest of all concerned. The provision comes in substance from St. 1820, c. 54, § 3, except that it was there provided that the application should be made to the Supreme Court of Probate. St. 1820, c. 54, § 3. Rev. Sts. c. 79, § 21. Gen. Sts. c. 109, § 22. Pub. Sts. c. 139, § 38. R. L. c. 145, § 35. But the object of this provision was and is, we think, to furnish a way in which a guardian could protect himself and his sureties by obtaining in advance a judicial approval of the sale and investment, and not to require him to obtain a license from the court in order to sell and transfer personal property of his ward. This was the view taken by the commissioners on the revision of the statutes in 1834, (Report of Commissioners on Rev. Sts. c. 69, § 11, note, and c. 79, § 22, note,) and is the construction which was in effect given to a similar statute in Mississippi by the Supreme Court of the United States in *Maclay* v. *Equitable Assurance Society*, 152 U. S. 499, and to our own statute by Woodruff, J. in *Wallace* v. *Holmes*, 9 Blatch. 65. The St. 1817, c. 190, § 35, which provided that stock in the public funds, shares in banks, insurance offices and other corporations, and loan office certificates could not be transferred by a guardian without a license from the Probate Court was repealed by the Revised Statutes, (Rev. Sts. p. 825,) and, though various provisions in that act were re-enacted, § 35 was not and has not been since. If the Legislature had had any intention that a guardian should obtain leave of the Probate Court to sell and transfer personal property of his ward, it would seem that this provision would have been kept alive or subsequently re-enacted. The case of *Ex parte Blair*, 13 Met. 126, which held that an executor or administrator could not

assign a mortgage without license from the Probate Court, rested upon statutory provisions which were applicable to executors and administrators alone, (Rev. Sts. c. 65, §§ 11, 14; *Burt* v. *Ricker*, 6 Allen, 77,) and which were changed by St. 1849, c. 47, re-enacted in Gen. Sts. c. 96, § 12, Pub. Sts. c. 133, § 9, and R. L. c. 150, § 10. In *Atkinson* v. *Atkinson*, 8 Allen, 15, the shares were transferred by the guardian without a license from the Probate Court. The decision was not, however, put on that ground as it would have been if a license had been necessary in the opinion of the court, but on the ground that the transferee took the shares with knowledge of all the facts which showed that the shares were transferred by the guardian to a surety on his bond for the purpose of indemnifying him as such surety; in other words, that they were transferred by the guardian on his personal account and were taken by the transferee with knowledge of that fact. The case of *O'Herron* v. *Gray*, 168 Mass. 573, relied on by the plaintiff, is very different from this. That was the case of a felonious appropriation by the cashier of a bank of certificates of shares, which had been wrongfully pledged by a guardian to secure his own debt, and had been left in the custody of the bank after the debt was paid, and had been taken by the cashier and used as security for his own indebtedness. The guardian was ignorant of the whole transaction and did nothing whatever to mislead the parties to whom the cashier pledged the certificates.

The result is that so much of the decree as adjudges that the mortgage remains, and still is the property of the plaintiff, and orders the trust company to assign and convey its interest in the same to her is reversed and the rest is affirmed.

*So ordered.*

*F. G. Cook,* (*J. J. Dolan* with him,) for the Beacon Trust Company.

*R. G. McClung & G. F. Wales,* for the plaintiff.