FLETCHER TRUST COMPANY, GUARDIAN *v.* HINES, ADMINISTRATOR ET AL.

[No. 26,507. Filed November 19, 1936. Rehearing denied February 1, 1937.]

*Means & Buenting* and *R. E. George,* for appellant.

*James D. Ermston, Barnett W. Breedlove* and *John E. Buenting,* for appellees.

HUGHES, C. J.—The appellant, as guardian of Dorothy E. Marley, filed its final report in said trust and the appellee, Hines, being an interested party pursuant to the Veterans' Guardianship Act, Sections 8-501 to 8-519 Burns 1933, §§3479 to 3497 Baldwin's 1934, filed exceptions thereto. A trial was had upon the exceptions and the same were sustained.

It appears that the appellant, as guardian, in 1929, filed its petition and secured an order of court to purchase certain government bonds and paid therefor $304.68, and these bonds were later sold without an order of court for $285.62; that in April, 1932, the appellant as guardian obtained an order to purchase a bond of the Indianapolis Water Company of the face value of $1,000, and said bond was purchased for $950; that appellant, as guardian, also pursuant to an order of court purchased a Free State of Bavaria bond of the face value of $1,000 for $960. In June, 1932, the appellant, as guardian, without an order of court sold the Indianapolis Water Company bond for $925, and the Free State of Bavaria bond for $182.50, which was the market value of said bonds at said time.

In sustaining the exceptions to the report the court found that the guardian should charge itself with the amount of the loss of said bonds with interest at 6 per cent, and that the total loss with interest amounted to $943.15. The court then made the following order:

"It is further ordered, adjudged, and decreed that said guardian, the Fletcher Trust Company, make and file its amended report on or before the 2nd day of January, 1935, and that it pay into the hands of the Clerk of this Court the sum of $943.15, in cash, for the use and benefit of the ward herein, Dorothy E. Marley."

Appellee Hines filed a motion to dismiss this appeal

for two reasons. The first reason is that appellant should have been made an appellee and the ■ Fletcher Trust Company in its individual capacity should have been named as appellant in the assignment of errors.

We cannot agree with said contention. The order appealed from is an interlocutory order and not a final judgment. *Leach* v. *Webb* (1916), 62 Ind. App. 693, 113 N. E. 311; *Angevine, Admr.* v. *Ward, Gdn.* (1879), 66 Ind. 460; *Pfeiffer* v. *Crane, Gdn.* (1883), 89 Ind. 485. The order is against the appellant in its fiduciary capacity and as such is properly named as appellant.

The second reason assigned by appellee Hines to dismiss the appeal is that the appeal bond was signed by the Fletcher Trust Company, in its individual ■ capacity, and as the appeal is taken in its fiduciary capacity, the bond is not sufficient. We think the bond sufficiently complies with the statute. To perfect an appeal from an interlocutory order the statute provides that the appellant shall file an appeal bond as in cases of term appeals from final judgments. Section 2-3204 Burns 1933, section 480 Baldwin's 1934, provides:

"... upon an appeal bond being filed by the appellant, with such penalty and surety as the court shall approve, ..."

Section 2-3219 Burns 1933, §491 Baldwin's 1934, provides:

"Such appeal may be taken only within thirty (30) days from the date of the interlocutory order appealed from. To perfect such appeal, the appellant shall file his transcript and assignment of errors, all within said period of thirty (30) days."

It is thus seen that it is not required that the appellant sign the bond, but it is required to file such a bond that the court will approve. It is held in many cases that an

appeal bond need not be signed by the judgment defendant, but if signed by the sureties it is sufficient. *Barr, Trustee* v. *Geary, Aud.* (1924), 82 Ind. App. 5, 142 N. E. 622, and cases cited. Motion of appellee Hines to dismiss the appeal is overruled.

The appellee, Dorothy E. Marley, also filed a petition to dismiss the appeal herein based largely upon the allegation that the appeal is not prosecuted by the Fletcher Savings and Trust Company, a corporation. As to this motion it is sufficient to say that the record shows that there was a stipulation of facts filed by and between the parties hereto and it shows that "the Fletcher Trust Company was appointed by the Probate Court of Marion County, Indiana, qualified on the 7th day of September, 1927, as guardian of Dorothy E. Marley, a minor." Motion of appellee Marley overruled.

The appellee insists that the order and judgment of the Marion Probate Court providing for the payment of $943.15 to the clerk of the court, for the use and benefit of the ward, Dorothy E. Marley, although appearing in the transcript is not properly a part of the record because appellant did not request the same in his praecipe. The praecipe, among other things, ordered that the transcript include ". . . the entry and order of the court sustaining said exceptions and disapproving the guardian's final report and ordering the guardian to file an amended report. . . ." We think this is sufficient to support the order as set out in the transcript.

It appears from the record that appellant's ward, Dorothy E. Marley, on September 20, 1933, after she arrived of age on September 18, 1933, signed a receipt acknowledging a final settlement and accounting with appellant as her guardian. It is contended by appellant that by reason of such action on the part of the ward it is released from further liability

and that the ward is estopped from questioning the release. It is asserted by the appellant in its brief that the settlement is not questitoned by the ward. The record shows, however, the contrary. The ward was in court as a witness and with an attorney objecting to the approval of the report although she filed no formal exceptions. She testified that when she signed the receipt acknowledging final settlement that she did not know of the loss sustained in the sale of the Bavarian bond and that it was not explained to her by the guardian.

The receipt signed by the ward was not conclusive evidence of a settlement between the appellant and its ward. Such a receipt may be explained, qualified or even contradicted by parol evidence. *Beedle et al.* v. *State* (1878), 62 Ind. 26.

The case was evidently tried on the theory that the sale of the bonds without an order of court was unlawful, that there was no emergency to sell the same and that the guardian did not act with diligence, ordinary care, and prudence.

It is contended by the appellant that under the common law a guardian has power to sell personal property of the ward without an order of the court and this is conceded by the appellee. This seems to be well settled by the weight of authority. 12 R. C. L. 1124, §24, 28 C. J. 1134, §222. The appellee insists that this rule has been changed in this state, and cites §8-112 Burns 1933 (§3434 Baldwin's 1934) to sustain the proposition. We do not agree to this construction of the statute. The section referred to reads as follows:

"The proper court may, on application of a guardian, or of any other person (said guardian having notice thereof), order and decree any change to be made in the investment of the estate of any ward, that may, to such court, seem advantageous to such estate."

In the sale of real estate belonging to a ward the law,

§§8-113 to 8-123 Burns 1933, §§3440-3447 Baldwin's 1934, is very specific as to what the guardian shall do, but we have found no statute directing the manner of the sale of personal property and we have found no case of our courts directly in point on the question of the necessity of obtaining a court order. There are decisions of other courts, however, which hold that unless the power is restricted by statute, the guardian may sell without an order.

In the case of *Maclay* v. *Equitable Life Insurance Society* (1894), 152 U. S. 499, 14 S. Ct. R. 678, the court was considering a statute of Mississippi which provided that, "The court may order a sale of personal property of a ward . . ." In discussing the statute, the court said (p. 504) :

> "But the statutes relied on, so far as they relate to guardians, would seem to be permissive and not restrictive, and only to provide a mode by which the guardian may obtain in advance a judicial approval of such a sale or compromise, and thereby, in the absence of fraud, establish that it is for the interest of the ward, instead of leaving that fact open to dispute at a future day."

And it was further said (p. 503) :

> "A guardian, unless his powers in this respect are restricted by statute, is authorized by virtue of his office, and without any order of court, to sell his ward's personal property and reinvest the proceeds, and to collect or compromise and release debts due the ward, subject to the liability to be called to account in the proper court if he has acted without due regard to the ward's interest."

A similar statute to ours was considered in the case of *Gardner* v. *Beacon Trust Co.* (1906), 190 Mass. 27, 76 N. E. 455, wherein it was contended that a guardian could not transfer a note and mortgage without an order from the Probate Court. The statute provided that upon application of the guardian, or any person interested in the estate of the ward, the Probate Court may authorize

to sell and transfer any personal property held by him as guardian. The court said (p. 31):

> "But the object of this provision was and is, we think, to furnish a way in which a guardian could protect himself and sureties by obtaining in advance a judicial approval of the sale and investment, and not to require him to obtain a license from the court in order to sell and transfer personal property of his ward."

The rules of law stated in the foregoing cases seem to be universally recognized. Section 8-112 (3434), *supra,* does not place a restriction upon the guardian so that it is necessary for him to secure a court order to sell personal property belonging to his ward. He may do so and thereby forestall any objections that might arise later in the administration of his trust. Although it is not necessary to obtain a court order to sell, it is certainly the wise and sound policy on the part of a guardian to secure such an order not only for the protection of the ward's interest, but also for his own.

A guardian in dealing with affairs of his ward is required to use due care and prudence, but such degree of care and prudence of the guardian, acting without fraud, is not required to be higher than that which an ordinarily prudent man exercises in his own affairs of a like nature. *Wainwright* v. *Burroughs et al.* (1890), 1 Ind. App. 393, 27 N. E. 591. In the case of *Slauter* v. *Favorite, Guardian* (1886), 107 Ind. 291, 294, 4 N. E. 880, it is said:

> "Guardians must be held to exercise care and prudence in managing and investing the money of their wards, and lax rules upon this subject would lead to grave abuses and wrongs, but, on the other hand, guardians are not insurers of the safety of investments made by them, nor should they be held to an extraordinary degree of care, for to require that high degree of care would deter prudent men from undertaking the trust, and thus compel the courts to appoint incompetent or unworthy men to

manage the person and estates of infants. . . . The degree of care and prudence required of the guardian ought not to be higher than such as an ordinarily prudent man employs in his own affairs, and .this is the degree which the law requires."

This rule of law seems to be universally recognized and it is not necessary to cite other cases.

Applying this rule of law to the facts in the instant case it forces us to the conclusion that the lower court erred in its judgment.

There is an absolute lack of evidence to show that the appellant did not use that degree of care and prudence such as is used by an ordinarily prudent business man. In the original investment, as ordered by the court, the holding of the Bavarian bond was unfortunate, but the complaint here is not to the purchase but to the sale of the bond. The evidence shows that the sale was made upon the recommendation and advice of two committees of the appellant—composed of business men. The evidence shows that there was a rapidly declining market value of the Bavarian bond due to political and social conditions in Germany. It was the judgment of these men that the bond should be sold to avoid further loss. The evidence shows that appellant, by its officers, acted in the transaction as careful and prudent business men under the facts as presented to them at the time. This is all the law requires. The bond was sold at its then market value.

It may also be said that there is no evidence to show that appellant did not use such care and prudence, as the law requires, in selling the Government bond and the Indianapolis Water Company bond, and this being true, the appellant would not be liable for the loss sustained by the ward.

The theory of the exceptions filed to the final report is based upon the fact that no petition was filed by the

guardian for the sale of the bonds and no order was made by the court to sell the same. There is no complaint made in the exceptions filed that the appellant did not use that degree of care and prudence required by law in the sale of the bonds. And as heretofore stated, the case was evidently tried upon the theory that because there was no order of the court to sell the bonds, the appellant was liable for all the loss sustained. As heretofore shown, it is not absolutely necessary for a guardian in this state to first obtain an order to sell personal property belonging to the ward. Where such an order is obtained, and where a full disclosure of all the facts is made, in the absence of fraud, such an order will ordinarily absolve a guardian from liability if any loss is sustained. However, if no order is made and a guardian acts upon his own responsibility in the sale of personal property then the law requires him to show that he acted with that degree of care and prudence which the law requires.

The statute, §8-111 Burns 1933, §3430 Baldwin's 1934, relative to the duties of guardians provides:

> "It shall be the duty of every guardian of a minor: . . . Second. To manage the estate for the best interest of his ward."

Under this provision so long as the guardian uses that degree of care and prudence used by ordinary business men he may do such things relative to his trust when it is for the best interest of the ward without an order of court except where the statute specifically provides for an order. In the case of *Cypress Creek Coal Co.* v. *Boonville Mining Co.* (1924), 194 Ind. 187, 198, 142 N. E. 645, the court said:

> "Under a statute giving a guardian the right to manage his ward's estate for the best interest of the ward, he has a right to lease the ward's real estate without an order of court."

We can not say, under the evidence, that the sale of the bonds was not for the best interest of the ward. On the contrary the evidence shows that it was for the best interest of the ward to make such sale.

We fail to find any evidence to sustain the finding and judgment of the lower court. It is true that there was a loss to the estate, but this fact is not alone sufficient. There must not only be a loss sustained, but it must be shown that the loss was caused by lack of due care and prudence upon the part of the guardian. The evidence does not show this. If a guardian is to be held responsible for every loss sustained in the course of his management of his trust regardless of the care and prudence he may have used he would then be an insurer of the safety of the investment made by him. The law does not require this. As said (p. 295) in the case of *Slauter* v. *Favorite, Guardian, supra:*

"... guardians are not insurers of the safety of investments made by them, nor should they be held to an extraordinary degree of care, for to require that high degree of care would deter prudent men from undertaking the trust, and thus compel the courts to appoint incompetent or unworthy men to manage the person and estates of infants."

We recognize the well established rule that if there is any evidence tending to sustain the finding and judgment it will not be disturbed on this ground, but if there is no evidence then a different rule applies and the judgment will be reversed. In this case, as we view the evidence, we find there is none to sustain any negligence, lack of care, or prudence on the part of the appellant, unless it was in the purchase of the Bavarian bond. The purchase, however, was approved by the court and under such circumstances the guardian is protected from any liability for loss resulting from the character of the investment. 28 C. J. 1140,

§234; *Indiana Trust Co.* v. *Griffith* (1911), 176 Ind. 643, 95 N. E. 573.

In the case of *Norwood, Admr.* v. *Harness* (1884), 98 Ind. 134, the administrator was charged with negligence in handling the trust property and was ordered to pay certain money into court. The court, in reversing the case, said (p. 148): ·

"Where there is testimony to sustain the finding, it can not be disturbed, but here the administrator was not liable unless negligent, and there is no evidence to show negligence. In such a case the judgment is always reversed."

Judgment reversed.