IN RE EIGENMANN'S GUARDIANSHIP: HINES, ADMINISTRATOR *v.* ADAMS, GUARDIAN.

[No. 26,970. Filed April 28, 1938.]

*Barnett W. Breedlove* and *John E. Buenting,* for appellant.

*George B. Henley,* for appellees.

FANSLER, J.—Theodore S. Eigenmann, a World War veteran under guardianship, received certain compensation insurance from the government. His father was his guardian. The guardian died, and the appellee William B. Adams was appointed to succeed him. The executrix of the first guardian turned over to the present guardian certain preferred stocks of Indiana realty corporations, and the present guardian thereafter purchased other similar securities. The purchases of these securities were not approved by the supervising court, nor were there petitions for approval of the purchases. The guardians filed periodical reports in which the investments were disclosed, but no question was raised about them until after the report filed in November, 1933, to which the Administrator of Veterans' Affairs filed exceptions. There was a trial, special findings of fact, and the report was approved. It was expressly found that: "In all of the transactions referred to in said Exceptions and in these Findings herein, said Guardian Adams acted in all respects as a reasonably prudent business man or fiduciary would have acted at the time and under the same or similar circumstances."

The evidence and the findings disclose that the preferred stocks involved were purchased prior to the depression of 1929, at which time they were considered by reputable investment houses as safe and conservative non-taxable investment securities; that in each case the issuing company was the owner of valuable real estate in fee or of a satisfactory leasehold, which was rented in advance to a tenant thought to be solvent and reliable, and at a rental adequate for all of the company's obligations to its preferred stockholders, including fixed dividends at 6 per cent and principal retirements, the time for which were definitely fixed in each case; that in each case there were appraisals, by reputable, disinterested appraisers; that the issues of the securities were not in excess of 50 to 60 per cent of the appraised value of the properties. All legal matters were approved by skilled and reputable attorneys. Voting rights were given to the preferred stockholders in case of default, so that the property might actually be taken over. The Administrator of Veterans' Affairs had issued a booklet advising guardians of veterans to consult the regional attorney of the administrator as to the advisability of contemplated investments. The appellee guardian did advise with the regional attorney before making the investments in question, and they were specifically approved by the attorney.

Appellant contends that, where a guardian invests the funds of his ward in stocks or bonds of a private corporation without an order of court, the investment is at the guardian's risk; that such an investment is a breach of trust, for which the guardian is liable without regard to the degree of prudence, diligence, or good faith exercised. Some of the decisions of this court seem on the surface to support appellant's contention, but we believe that, upon careful examination, neither the authorities in this state nor

sound reason support that view. There is no statute in this state designating the form of investments permitted to guardians, and there is no statute requiring the prior approval of the court to which the guardian reports before the purchase of securities. In *Tucker et al.* v. *State ex rel. Hart* (1881), 72 Ind. 242, it appeared that a guardian had invested funds in the common stock of a company engaged in the quarrying and sale of stone. This was disapproved. In *Gilbert et al.* v. *Welsch, Adm'r* (1881), 75 Ind. 557, cited by appellant, an administrator with the will annexed had invested funds of his trust in bank stock in his own name and contrary to the provisions of the will. The case is not in point. In *Indiana Trust Co., Guardian* v. *Griffith, etc.* (1911), 176 Ind. 643, 649, 95 N. E. 573, 575, 44 L. R. A. (N. S.) 896, 902, 903, Ann. Cas. 1914A, 1023, 1025, it is said that, in making investments without the court's approval, a guardian must show something more than that he acted as an ordinarily prudent man of business might do with his own property. "The trustee must conduct himself faithfully, and exercise a sound discretion. He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of the capital invested. A business man of more than average caution may, and often does, assume intentional risks in the investment of his own property. For the sake of obtaining a greater than an ordinary income, he will often invest in such a manner that the risk of ultimate loss is considerable, and such speculative use of his property would not be regarded as illegitimate, nor as deserving of any censure. No such risk is permitted to the trustee." That case, however, involved the question of whether or not trust companies, under the statute defining their pow-

ers, were controlled by the same rules as individual guardians. In the recent case of *Fletcher Trust Co.* v. *Hines* (1936), 211 Ind. 111, 118, 119, 4 N. E. (2d) 562, 565, 566; *Slauter* v. *Favorite, Guardian* (1886), 107 Ind. 291, 4 N. E. 880, 57 Am. Rep. 106, is quoted with approval as follows: "Guardians must be held to exercise care and prudence in managing and investing the money of their wards, and lax rules upon this subject would lead to grave abuses and wrongs, but, on the other hand, guardians are not insurers of the safety of investments made by them, nor should they be held to an extraordinary degree of care, for to require that high degree of care would · deter prudent men from undertaking the trust, and .thus compel the courts to appoint incompetent or unworthy men to manage the persons and estates of infants. . . . The degree of care and prudence required of the guardian ought not to be higher than such as an ordinarily prudent man employs in his own affairs, and this is the degree which the law requires." The English rule is said to be that guardians may not lawfully invest in the stock of private corporations. But the decisions seem to be based upon the principle that guardians must invest, and not speculate with, trust funds, and that common stocks are speculative, and it cannot be doubted that this is ordinarily true. But at certain times, and under certain conditions, government and municipal bonds fluctuate greatly in value in comparatively short periods. Loans secured by mortgage or otherwise upon the credit of real estate ordinarily fluctuate but little, and still at the very period after 1929, when the securities here in controversy depreciated, farm land and all real estate in Indiana had so shrunken in value that most loans secured by mortgage were at least temporarily uncollectible and had practically no market. It would appear therefore that absolute safety and absolute assurance that there

will be no fluctuation or depreciation may be practically unattainable. It will be noted that the representative of the appellant Administrator of Veterans' Affairs approved these investments; that the guardian and his associates were investing their own funds in the same securities; that they were generally regarded by conservative investors as a safe and prudent investment. The investments were disclosed to the court in current reports, which were approved, and there is nothing to indicate that the court would not have approved in advance, upon petition, for the same reason that it afterwards approved the reports disclosing the investments. It is urged that the approval of current reports *ex parte* is not conclusive, and that is true, but the approval in advance of an investment is conclusive in the absence of fraud, and the court's action there, too, is *ex parte*. The preferred stocks in question made provision that no prior mortgages or securities of any sort should be issued by the companies. The amount of the return was definitely fixed. The evidence is amply sufficient to support the determination of the trial court that the guardian acted with the degree of care which is required of guardians investing the funds of their trust. What sources of information would have been open to the trial judge, upon passing upon an *ex parte* petition for authority to buy the same securities, that were not open to the guardian we cannot imagine. It cannot be conceived that judges of probate courts are endowed with any greater wisdom in respect to investments than other men of ordinary prudence, or that they have any other or different sources of information. Judges or guardians can only "observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of the capital in-

vested." If therefore the guardian has used the same means that the judge of the court would have used to discover the advisability of the investment, and has determined in good faith, and upon a reasonable view of the facts, that the investments are sound and prudent ones, it cannot be said that the estate is in any different position than if the matter had been submitted to the court and the court's approval procured. In view of the decision of the supervising court now, it is amply clear that approval would have been given upon application. It is also noted that the guardian made inquiry of the appellant Administrator of Veterans' Affairs, established by law to assist in safeguarding the interests of veterans, and that the administrator, complaining now, approved the investments before they were made.

If it is thought that public policy requires that investments of the funds of wards shall be approved before they are made, it is within the discretion of the legislature to so provide. If public policy and the best interests of estates require that there shall be an arbitrary classification of the securities in which trustees may invest, that also is within the legislative discretion, and the legislatures of many states have made definite provision in that respect. But conditions change and values fluctuate, and there have been instances in which heavy losses were sustained in investments approved by legislative enactment. Jurisdiction to arbitrarily select and classify securities suitable for trust investments is within the legislative field. It is not within the jurisdiction of courts, nor can it be assumed that judges, because of their office, have greater skill or prudence in respect to such matters than other men. Care should be taken within statutory limitations to appoint discreet and prudent persons as guardians, and the safety of trust funds must depend upon the good-faith exercise of prudence and care by the guar-

dian unless and until arbitrary rules of investment are established by the Legislature. Until there are such regulations, no sound or just reason is seen for charging a fiduciary with losses where the investment was of such a character and made under such circumstances that the supervising court would have approved upon application.

Appellant cites the case of *Asher* v. *State ex rel. Applegate et al.* (1883), 88 Ind. 215, in which it is said that pension benefits received by a guardian from the United States government are more strictly guarded than money received from other sources. An examination of the case indicates that the court referred to a penal statute which protected such funds from conversion, in addition to the laws which protect ordinary funds. No reason is seen why a guardian should be held to a less degree of accountability for funds which do not come as a pension from the government.

Judgment affirmed.