In March, 1922, Walter C. Clarke was appointed guardian of William R. McCurdy, an infirm World War veteran. The guardian administered the estate from that date and filed a current report March 10th, and a final report and his resignation as guardian May 3, 1939. The resignation was accepted by the court and the appellee Fidelity Trust Company was appointed guardian of the estate. A hearing on the final report was continued.
The administrator of Veterans' Affairs filed exceptions to the current report, and the Fidelity Trust Company, as guardian, filed exceptions to the final report. The current and final reports, together with the exceptions thereto, were consolidated. A trial was had which resulted in an order sustaining the exceptions, whereby the former guardian Clarke was ordered to pay to the Fidelity Trust Company, guardian, a total sum of $4,629.01, to which order the appellant objected and excepted, and prayed an appeal to this court. The appellant filed a motion to modify the order and a motion for a new trial, both of which were overruled, to which rulings exceptions were reserved. These latter rulings are assigned as errors relied upon for reversal. Also, the ruling of the court upon the exceptions to the current and final reports is assigned as error. It is upon this assignment that the court proceeds to a consideration of the questions presented.
The court sustained the objections of the appellee administrator of Veterans' Affairs to nineteen items of *Page 577 
expenditure made by Clarke as guardian, totaling $606.26. These items represent sums paid for repairs upon real estate owned, current taxes, and an assessment made under the Barrett Law.
During the period of the administration the guardian acquired, for the use and benefit of the estate, several parcels of real estate in the City of Indianapolis. In the final report he listed as assets of the estate four mortgages executed to secure loans upon four several tracts of real estate, the total of which amounted to $4,022.75. The court ordered the guardian to take over these mortgages and pay to the Fidelity Trust Company, the new guardian, that amount in cash. The evidence discloses, without contradiction, that when Walter C. Clarke qualified as guardian in 1922 the ward's estate amounted to a total of $3,000. At the time he filed his final report the total estate amounted to $17,000. During the time he was guardian he received from the government for the use of his ward the sum of $100 per month, of which he paid to the father of the ward $85 per month for board and care. There is no showing that the value of the estate was enhanced from any source except from investments made by the guardian.
In connection with the expenditures made for repair and taxes it must be noted that during all of the time the guardian received rentals from the various properties, charged the same to himself, and fully accounted for all amounts received.
A current report was filed in 1938 to which the administrator of Veterans' Affairs appeared. A hearing was had in May of that year, and an order of the court was made approving all 1. investments made by the guardian to that date including the mortgage loans, with the exception of four pieces of real *Page 578 
estate owned by the guardianship which had been purchased upon mortgage foreclosures. The guardian was ordered and directed to convert this real estate into cash not later than July 3, 1938, for not less than $3,550. This was done, but in making a sale for that amount the guardian, in the meantime, caused repairs to be made upon the property and the current taxes to be paid. The exceptors objected to a credit on this account upon the theory that the court intended the $3,550 to be net to the estate. The facts show without dispute that during that period, the same as at former times, rents received from the property were paid into the estate; that the property was in need of repair and was not in a salable condition. It is to be noted, however, that the order of the court did not direct that repairs be or not be made, or that taxes be paid. Rather it may be assumed that ordinary repairs be made and the current taxes be paid. Ordinary prudence would require this.
As stated above, the court further directed the guardian Clarke to take up four mortgages totaling $4,022.75 and owned by the estate. The facts concerning these items are that each of 2. these loans was made and the mortgages taken prior to the depression of 1929, and at the time they were taken the loans did not exceed 50 per cent. of the appraised value of the real estate. Upon the trial of the exceptions to the report of the guardian, appraisers appointed by the court testified as to the value of the real estate covered by the mortgages as of December, 1939, the date of the hearing. Their testimony was to the effect that the real estate was not worth more than the mortgages, and in one case was worth less than the debt. It is not conceivable that the value of the real estate late in 1939 or early in 1940 has any bearing upon the value *Page 579 
of the real estate prior to 1929. It is a matter of common knowledge that following 1929 real estate values depreciated along with the values of other property. There is testimony in the record to the effect that these several tracts of real estate depreciated in value during that period; that the loss, if any there may be, is or will be caused by the general depreciation in values and not because of mismanagement or bad judgment of the guardian.
Prudent business men in investing their private funds usually regard such loans as safe and sound. It cannot be said that loans made under such circumstances are accompanied by hazards which may not befall any investor. These investments seem to be such as ordinarily prudent men make in the transaction of their own affairs. Ordinarily the value of real estate does not fluctuate materially within a short period. Usually such investments are regarded by prudent business men as safer investments than investments in stocks and bonds, for the reason that fluctuation is not so liable to occur. However, during the continuance of this guardianship from 1922, values of real estate did fluctuate. The depression following 1929 was so pronounced that sagacious investors suffered heavy losses upon loans made by them and secured by mortgages upon real estate for not more than 50 per cent. of the appraised value at that time.
The appellees' position and the finding and judgment of the court amount to requiring a guardian to be a guarantor of all loans made by him in the administration of the estate. He 3. cannot be required to do more than an ordinarily prudent man does in investing his own funds. When the depression came and the guardian was compelled to foreclose and to purchase the property at sheriff's foreclosure sale, he *Page 580 
did what an ordinarily prudent man would do in transacting his own affairs. The guardian conducted the foreclosure proceedings without a charge of an attorney fee or cost, except court costs. However, this item is taken out of consideration by the fact that the guardian sold the real estate as ordered for $3,550, the original cost, and paid the same to the present guardian. The exceptors say there is a loss because the guardian expended certain sums in the repair of the property and in the liquidation of taxes. They seem to forget that the estate received all of the rentals of the property during the time it was owned.
Guardians must exercise care and prudence and must not be lax in their investments and handling of the funds, but on the other hand they are not insurers of the safety of investments. 4, 5. Nor should they be required to exercise a higher degree of care than an ordinarily prudent man exercises in the transaction of his personal affairs. If such were the rule, prudent business men would hesitate to act as guardians for incompetents. It would be impossible for the court to procure the services of such men, and as a result ward's estates might be placed in the hands of incompetent persons and subjected to loss. There is nothing in the record to disclose that this estate lost one cent because of mismanagement or imprudent investments. Upon the whole the record discloses that the guardian was a prudent business man, and exercised skill and care in increasing the value of the ward's estate. If the estates of all incompetents were as successfully handled, there would be no anxiety concerning the investments. Prudent investors now and then suffer a loss because of some unforeseen event which affects a particular investment. The appellant acted in good faith and with reasonable diligence in taking the mortgages *Page 581 
involved in this proceeding and in paying the taxes and keeping the property in repair. He cannot be held liable solely upon the ground that a depression caused the value of the real estate to depreciate. The record discloses no other ground for objection to the guardian's reports. The court knows that care and prudence could not have forestalled the devastating effect of that depression.
In support of the propositions above asserted, the following authorities are cited: In re Eigenmann's Guardianship: Hines v.Adams (1938), 214 Ind. 92, 14 N.E.2d 585; Fletcher TrustCo., Gdn. v. Hines, Admr. (1937), 211 Ind. 111,4 N.E.2d 562; Slauter v. Favorite, Guardian (1886), 107 Ind. 291, 4 N.E. 880. Many other decisions of this court could be added to sustain the guardian in his conduct in handling this estate.
It is therefore ordered that the judgment of the lower court be in all things reversed, and the court is directed to approve both the current and final reports and for further action not inconsistent with this opinion.
NOTE. — Reported in 29 N.E.2d 199.