No. 7772.

YOST ET AL. *v.* THE STATE, EX REL. BOUSLOG ET AL.

GUARDIAN.—*Resignation and Reappointment in Another County.*—*Liability of Bondsmen.*—A guardian who resigns, and obtains a reappointment in another county, where he gives bond and charges himself with the sums which had come into his hands under his first appointment, does not thereby discharge his first bondsmen from liability for a previous defalcation.

SAME.—*Additional Bond for Sale of Realty.*—*Accounting for Different Funds.*—*Burden of Proof.*—*Defalcation.*—The sureties upon a guardian's addi-

tional bond for the sale of realty are liable for the proceeds of the sale only, and the sureties on the general bond for other funds. The sureties upon each bond undertake that the guardian will account for the respective funds for which they are liable, and therefore, when sued therefor, have the burden of showing that the guardian has accounted for the same. If the different funds have been mixed and the account so kept that a proven defalcation can not be identified with either fund, it is a breach of both bonds; and the action may be on either bond, if not for the entire loss, certainly for a pro rata share of it.

From the Henry Circuit Court.

*M. E. Forkner* and *L. P. Mitchell,* for appellants.

*T. B. Redding,* for appellees.

WOODS, J.—The briefs in this case are confined to the over-ruling of the motions of the appellants for a new trial, which they asked on the grounds that the decision of the court is not sustained by the evidence, and is contrary to the law and the evidence, and that the amount of the recovery is excessive.

The appellants were sureties upon the additional bond of the guardian of the relatrix, executed in a proceeding on the petition of the guardian for the sale of real estate belonging to his wards. The action was upon the bond for the recovery of a part of the proceeds of the sale.

The sale was made on the 10th day of November, 1868, for $4,000, one-third of which belonged to the relatrix. The guardian made a report to the court in December, 1869, charging himself in favor of the relatrix with her share of said sum, and other sums to the total amount of $2,040.75, and claimed a credit for $320.18, leaving to be accounted for the net sum of $1,720.59. Subsequent reports were made in December, 1870, and 1871, accounting for interest and claiming credits, and in the last report a credit for $1,360, invested in land purchased for the relatrix under an order of the court, leaving a balance of $368.46 to be accounted for.

At the December term, 1872, of the court—the Henry Common Pleas—the appellant Yost applied to be released from further liability on the bond, and, upon proper proof of notice, obtained an order for his release, the court at the

same time ordering the guardian to file a new bond within thirty days. Thereupon, according to the testimony, there being no record evidence of the fact, the guardian presented to the judge of the court, in open court, his resignation of the guardianship, and within a few days applied to the clerk of Fulton county, where one of his wards resided, for letters, and, upon his giving bond and surety in the sum of $8,000, and taking the oath, the clerk of that county issued to him letters of guardianship, and thereafter he made a report to the Fulton Common Pleas, in which he charged himself with said sum of $368.46 belonging to the relatrix.

It may be remarked here that it does not appear that the Fulton Common Pleas entertained or acted on said report, or even confirmed the letters so issued, or in any way exercised jurisdiction in the matter.

The guardian afterwards made a settlement with the relatrix and her husband, in which it was determined that the sum due her was $——, of which $88 were then paid, and the remainder has not been paid.

The following is the principal point or argument made by appellants' counsel:

"There is no evidence that, at the time Yost was released from the bond, the guardian had converted any of the money. The presumption would be that he had not. The first question * * is this: When a surety on a guardian's bond applies to the proper court to be released from liability on such bond, in proper form, and the court enters an order releasing him, and requiring the guardian to give a new bond in thirty days, having full jurisdiction, * * and the guardian thereupon files in open court his resignation of the trust, which, however, is not entered of record, and thereupon is appointed guardian of the same ward by another court, in another county where the ward has property, gives a good and sufficient bond there and accounts to said court for all funds in his hands, is such surety thereby discharged from future liability on such bond? I maintain that he is." Counsel cite 2 R. S. 1876, p. 598,

section 26, p. 504, section 29; *Lane* v. *The State, ex rel.*, 27 Ind. 108; *Comstock* v. *Crawford*, 3 Wal. 396; *Colomb* v. *Jones*, 8 La. An. 442.

Substituting "guardian" for "executor or administrator," section 29, referred to, will read as follows:

"Any surety may apply to the proper court of common pleas to be released from his bond with such guardian, * * * when such court shall release such surety; and if such guardian fail to give new bond or surety, as by it directed, he shall be removed, and his letters superseded; but such original surety shall not be released until such guardian so gives bond, or is removed by the court; and such original surety shall be liable only for the acts of such guardian from the time of the execution of the original to the filing of such new bond."

We do not find it necessary to decide whether, under the circumstances, the court in Fulton county had power to make the appointment, which, it is alleged, it did make; nor whether it was competent to show by parol evidence the resignation filed in the Henry Common Pleas; nor what was the effect, if any, of the mere filing of such resignation without action of the court.

It is plain that the liability of the appellants upon their bond did not cease until the money received by the guardian under it was accounted for in some mode recognized by the law. If, on the application of Yost to be released, the guardian had filed a new bond, that would not have released the appellants from liability for a prior default; and if the court had made a formal order accepting the alleged resignation, they would still have been liable, unless the proceeds of the sale of the real estate had been accounted for, and the remainder thereof, if any, paid into court or to the successor in the trust.

Conceding, that by the appointment in Fulton county Richardson became his own successor in the trust, it does not appear that. he ever became, with his bondsmen under the new appointment, liable to account for the moneys in question. In the report made to the Fulton court, it is true, that he charged

himself with such moneys, but, unless at the time or after that appointment was made, he actually had said moneys in his possession, his charging himself did not bind his sureties. *Lowry* v. *The State, ex rel. Hull,* 64 Ind. 421 ; *Ohning* v. *The City of Evansville,* 66 Ind. 59 ; *Cogswell* v. *The State, ex rel. Albert,* 65 Ind. 1 ; *Nichols* v. *The State, ex rel. Clark,* 65 Ind. 512.

Counsel further contend, that " it can not be determined from the evidence, whether the money unaccounted for consisted of the proceeds of the real estate, or was money derived from other sources, not covered by the bond of the appellant, and that there is ' then a failure of evidence so far as the sureties are concerned.' "

It is true, as claimed, that the evidence does not show whether the amount unaccounted for was derived from one source or the other ; nor, stating the proposition in another form, does the evidence show whence the moneys came which were accounted for, and paid out to the use of the relatrix.

The circuit court seems to have acted upon the theory that under the circumstances the sureties on the respective bonds were liable for a *pro rata* share of the amount of the defalcation, and awarded against the appellants a sum in proportion to the amount of money derived from the sale of the land, compared with the aggregate of money in the guardian's hands from all sources. This is certainly as favorable a view of the question as the appellants were entitled to. Their undertaking was that the guardian should account for the proceeds of the real estate. The evidence showed those proceeds in the guardian's hands, which, on principle, would seem to cast on him and on his sureties, who undertook for him that he should account, the burden of showing that he had accounted properly and fully for these moneys ; *Worgang's Adm'r* v. *Clipp,* 21 Ind. 119 ; *The State, ex rel. Mount,* v. *Steele,* 21 Ind. 207 ; and if the evidence of accounting failed to show of which fund the guardian was in default, the condition of each bond was broken to the extent of the defalcation, and the plaintiff was entitled to recover the whole sum of whichever set of bondsmen

she should choose to sue, leaving it to be settled between the respective bondsmen themselves, without driving the plaintiff to two actions, whether there should be a pro-rating of the burden ; but, however this may be, we are clear that the appellants are not entitled to complain of the finding that was made against them, and that the damages awarded were not excessive.

The judgment is affirmed, with costs.