Asher *v.* The State, *ex rel.* Applegate *et al.*

---

No. 9920.

## ASHER *v.* THE STATE, EX REL. APPLEGATE ET AL.

GUARDIAN AND WARD.—*Conversion of Ward's Estate.*—Where a guardian receives money belonging to his wards, and afterwards, when making a report to the proper court, under oath, as to the condition of his wards' estate in his hands, fails to charge himself with such money, or to make any disclosure of the fact of his having received it, such failure to charge himself and such concealment of the fact of its reception amount to a conversion of the money so received by him.

SAME.—*Judgment Against Deceased Guardian's Estate.*—Where an account is filed against the estate of a deceased guardian for an alleged balance due from the guardian to his wards at the time of his death, and judgment is rendered against the estate for a balance found to be so due, the inference is that the guardian was shown to have made himself personally liable to his wards for the amount for which the judgment was rendered.

SAME.—*Pension Money of Ward.*—Pension money received by a guardian for his wards from the Government of the United States is more strictly guarded than moneys received by him from other sources.

From the Hendricks Circuit Court.

*J. V. Hadley, E. G. Hogate* and *R. B. Blake,* for appellant.
*L. M. Campbell,* for appellees.

NIBLACK, J.—Action by the State, on the relation of Peter N. Applegate, guardian of William H. Brown, James Brown

Asher v. The State, ex rel. Applegate et al.

and John D. Brown, against Joseph Asher, as surety on the bond of one John Brown, a former guardian of the relator's wards.

At the defendant's request the court made a special finding of the facts, of which the following is believed, to be a fair synopsis: That the father of the relator's wards died in December, 1862; that, on the 5th day of February, 1863, John Brown, the grandfather of said wards, was, by the court of common pleas of Owen county, appointed their guardian, the defendant becoming the surety upon the bond then executed by the said John Brown as such guardian, in the penal sum of $1,000; that, at the May term, 1864, of said last named court, the said John Brown procured an order to sell certain real estate belonging to his said wards, and executed an additional bond as such guardian in the penal sum of $1,500, with one James M. Steele as his surety, and afterwards, on the 4th day of June, 1864, sold said real estate for the sum of $750; that, on the 5th day of September then next ensuing, he, the said Brown, made a report, as such guardian, to said common pleas court, charging himself with the proceeds of said real estate and other assets, amounting to the aggregate sum of $1,309.05, and claiming credits as a deduction therefrom in the sum of $520.55, leaving a balance in his hands, as shown by that report, of $788.50; that the said John Brown had before that time received, for arrears of pay due to his wards, the sum of $214.43, of which amount he had only charged himself with the sum of $108 in his report, leaving $106.43 unaccounted for; that he afterwards, during the years 1867, 1868 and 1869, also received from the U. S. Government, on account of pension money due his said wards, several sums, amounting in all to $785.93, for which no account was rendered; that, on the 27th of February, 1864, the said John Brown purchased two hundred acres of land in Morgan county, in this State, for the sum of $2,200, which was paid for in part out of money in his hands belonging to his said wards, and took a deed therefor in his own name; that the defend-

ant was, on the 8th day of May, 1869, by order of the said court of common pleas of Owen county, released from further liability as surety on the bond in suit, and a new bond was executed by the said John Brown in the penal sum of $2,000, with one William H. Brown as his surety; that some time after executing this new bond the said John Brown died, and one Henry Lewis became his administrator; that afterwards, in September, 1875, the relator Applegate was, by the Owen Circuit Court, appointed guardian of said wards, as the successor of the said John Brown; that, at the December term, 1875, of the said Owen Circuit Court, in an action in which the said Henry Lewis, as administrator of the said John Brown, was plaintiff, and the relator Applegate, guardian as herein above stated, was defendant, involving the mutual accounts existing between the said Brown and his said wards at the time of his, said Brown's, death, said court found and adjudged that there was due from the estate of said Brown to said wards, after deducting all proper credits, the sum of $2,-262.28; that in a proceeding in the Morgan Circuit Court by Lewis, as the administrator, as above set forth, to have the land purchased by his decedent in Morgan county sold to pay debts against his estate, the relator Applegate procured a lien to be established against one hundred and twenty acres of that land for the sum of $1,400, in favor of said wards, that being the estimated amount of their money invested in said land by the decedent Brown, and said one hundred and twenty acres being all of said land of which he, the said Brown, remained the owner at the time of his death; that part of said sum which Brown invested in the Morgan county land did not come into his hands until after the defendant had been released as surety on his bond; that upon the sale of the last named land the relator received on the lien in favor of his wards the sum of $1,213.25; that he also received of the estate of Brown, on its final settlement, the sum of $286.67, said estate being an insolvent estate, and paying only about seventeen cents on each dollar of indebtedness; that he also

received from the sale of personal property the further sum of $25, making his total receipts the sum of $1,524.92 on claims due to his wards; that, on the 4th day of April, 1869, the said John Brown, as guardian, made a further report to the common pleas court of Owen county, in which he charged himself with the sum of $1,027.70, and claimed credit for $31.36, leaving a balance against him of $996.34, which report was approved by the court, but did not include the sum of $785.92 of pension money heretofore referred to as having been received by him; that the said Brown received no other funds or assets after the making and approval of his report, lastly above named, until some time after the 8th day of May, 1869, when the defendant was discharged from further liability on his bond; that up to that time he was chargeable with assets received as follows:

| | |
|---|---:|
| Balance on report of 1864 | $ 788.50 |
| Arrears of pay and bounty not charged | 106.43 |
| Interest on above two items | 155.86 |
| Pension money | 785.92 |
| Interest on same | 63.78 |
| Interest received and reported in 1869 | 113.04 |
| | |
| Total | $2,013.53 |
| Deduct credit allowed in 1869 | 31.36 |
| | |
| Balance | $1,982.17 |

Upon these findings the court stated its conclusions of law as follows:

*First.* That the defendant was liable to pay the relator the sum of $1,000, the full penalty of the bond sued on.

*Second.* That judgment ought to be rendered in the name of the State for the use of the relator against the defendant for said sum of $1,000.

The defendant excepted to the conclusions of law thus stated by the court, but judgment was nevertheless rendered against him for the sum of $1,000. Error is assigned upon

the conclusions of law stated by the court, and upon which judgment was rendered.

Owing to the brevity and uncertainty in the statement of some of the facts purporting to be found by the court, and particularly to the omission of any statement as to the dates at which certain sums of money were received by the two guardians, Brown and Applegate, respectively, we are wholly unable to state a formal or satisfactory account of the condition of the assets belonging to the wards at the time of the commencement of this suit. This brevity and uncertainty do not, however, so much apply to the aggregate amount of money received by Brown during the time covered by his first bond, as they do to the dates of certain transactions which the court below must have held to be conversions by him of a considerable part, at least, of the assets in his hands during that period of time, and to the probable amount thus converted to his own use by Brown.

The appellant assumes that there is nothing in the facts as found from which it can be inferred that Brown converted any of the assets which came into his hands prior to the 8th day of May, 1869, to his own use, except an indefinite amount of money invested in the Morgan county land, which was afterwards substantially recovered by the enforcement of a lien upon that land, and that hence the court erred in coming to the conclusion that he, the appellant, was liable for any definite sum of money as surety upon the bond in force previous to that date. Our inference, however, from the finding of the facts is, that all the assets which came into Brown's hands, except those for which either he or his estate received a credit, were, in legal contemplation, converted by him to his own use, and that the only real difficulty lies in the adjustment of his defalcation between the different bonds executed by him as guardian.

As has been observed, the Owen Circuit Court, in the action between Lewis as the administrator of Brown, and Applegate, the appellee's relator, as guardian, adjudged that Brown's

estate was indebted to the wards, then represented by Applegate, in the sum of $2,262.28. Such a judgment could only have been rightfully rendered upon evidence showing to the satisfaction of the court rendering it, that Brown had made himself personally liable for the value of the assets which ought to have been found remaining in his hands as a separate and distinct fund belonging to the wards. Hence we must construe this judgment of the Owen Circuit Court as having established the fact that Brown had made himself personally liable for all the assets received by him for which he had not accounted at the time of his death.

The failure of Brown to include in his reports to the court the sums of $106.43, arrears of pay, and of $785.92, pension money, respectively obtained by him, was, under the circumstances, a concealment, and hence a practical conversion of those sums of money, and a breach of his first bond, which was then in force. Conceding that the conversion of the money put into the Morgan county land was substantially reimbursed by the after enforcement of the lien against the greater portion of that land, which is more by near $200 than the appellant could in any event justly claim, there remained only the sum of $286.67, received from the estate of Brown, and the sum of $25, derived from the sale of personal property, which could, under the most favorable construction, have been applied entirely as credits on the arrears of pay and pension money withheld by Brown.

These sums, we feel justified in inferring, were not received by Applegate until after December, 1875, when the judgment of the Owen Circuit Court, adjudging the estate of Brown to be indebted to his wards, was rendered, and, counting interest on the arrears of pay and pension money withheld up to the earliest time at which said sums of money were probably received by Applegate, and became applicable as credits, there still remains, after deducting said sums, more than $1,000 due on account of such arrears of pay and pension money.

In this computation the amount realized by Brown from

the sale of real estate, and secured by an additional bond, is not taken into account. This amount came into Brown's hands before he obtained the pension money, and, hence, may have been at once used in part payment for the Morgan county land, which had already been purchased by him.

Other reasons might be given in support of the conclusions of law stated by the court, but we deem it unnecessary to extend this opinion. *Colburn* v. *State, ex rel.*, 47 Ind. 310; *State, ex rel.*, v. *Sanders*, 62 Ind. 562; *Bevis* v. *Heflin*, 63 Ind. 129; *Lowry* v. *State, ex rel.*, 64 Ind. 421.

The judgment is affirmed, with costs.

## ON PETITION FOR A REHEARING.

NIBLACK, J.—In an elaborate and exhaustive petition for a rehearing the appellant challenges the correctness of our opinion in this case, announced as above, in several respects. He first complains that he is held responsible for the arrears of pay and pension money received by his principal, because of his principal's failure to include those sums in his report of assets in his hands, and then again for the same moneys invested in the Morgan county land, reiterating the argument contained in his original brief, that the investment in that land constituted the only real conversion of the moneys in question, and that the defalcation thereby created was substantially reimbursed by the sale of the land.

But we can not infer from the finding of the court, that the arrears of pay and pension money, unaccounted for, were invested in the Morgan county land. Brown, the guardian, had other moneys in his hands arising from the sale of lands and for arrears of pay reported to the proper court, which may have supplied the indefinite and unnamed amount of the wards' money put into that land.

The appellant does not controvert our position, that, under the circumstances, the failure of Brown to report a part of the arrears of pay and the pension money he had received, was a conversion by him of the moneys not reported, insist-

ing only that the conversion, of which Brown was thus guilty, was merged in the conversion resulting from the investment in the Morgan county land, and reimbursed as herein above stated.

This argument rests upon the assumption that all the money not accounted for was put into the land, as well as that all the money of the wards so put in was recovered back, principal and interest, by the enforcement of a lien on the land.

As we have already intimated, no inference can be properly drawn from the facts as found by the court that will sustain either branch of that assumption. When Brown expressly failed to account for a part of the moneys which had come into his hands, his liability on his bond for the sums so unaccounted for became fixed, and for the purposes of this case it is not material to enquire what he otherwise may have done with the same moneys, except to ascertain whether they still remain unaccounted for.

For the reasons given it has not been shown that the particular funds concealed in this case have ever been made good, in any way, to the relator's wards. Pension money received by a guardian from the United States Government is more strictly guarded than moneys received by him from other sources. Brown's conversion of the pension money constituted a crime as well as a legal liability. R. S. U. S., sec. 4783.

The appellant next complains that all the omissions and uncertainties apparent upon the face of the special finding made by the court have not been counted in his favor as they ought to have been; that, so counting these omissions and uncertainties, he is entitled to judgment upon the special finding. But the omissions and uncertainties of which the appellant claims the benefit have reference mainly to matters occurring after his release from the bond in judgment, and, as we construe them, do not cast any obscurity upon the facts connected with Brown's concealment of most of the money received by him from the United States Government while that bond was in force.

While the case made by the special finding is not in all respects a satisfactory one, we are unable to come to any conclusion different from that at which we arrived at the former hearing.

The petition for a rehearing is, consequently, overruled.