MOORE ET AL. *v.* THE STATE OF INDIANA, EX REL. FERGUSON ET AL.

[No. 6,058. Filed March 31, 1908. Rehearing denied June 9, 1908. Transfer denied March 11, 1909.]

1. PLEADING.—*Complaint.—Special Findings.—Executors and Administrators.—Removal.—Failure to Turn Over Money.—Injury to Creditors.*—A complaint and special findings showing that an administrator sold lands in order to pay creditors, that he received the money therefor and failed to pay such creditors, that he was removed from his trust and failed to pay over the money in his hands, and that such creditors have not been paid, show a cause of action on their part against such administrator and the sureties on his bond, and such special findings sustain a judgment for the creditors. p. 393.

2. EXECUTORS AND ADMINISTRATORS.—*Conversion.—Liability.—Decedents' Estates.*—An administrator who fails to turn over the money in his hands, upon the order of the court, is guilty of conversion, and he and his sureties are liable, at the suit of creditors of the estate, for the amount of money converted, together with penalty and interest. p. 394.

3. PLEADING.— *Complaint.*— *Special Findings.*— *Administrators.*— *Bonds.*—*Breaches.*—*Venire de Novo.*—A complaint and special findings showing the administrator's failure to apply funds to the payment of creditors, and his failure to turn over the money in his hands upon the order of the court, sustain a judgment founded upon a breach of such administrator's bond, and justify the overruling of a motion for a *venire de novo.* p. 394.

4. APPEAL.— *Harmless Error.*— *Complaint.*— *Demurrers.*— *Motions to Make More Specific.*—*Special Findings.*—*Evidence.*—Where the evidence sustains special findings showing a breach of an administrator's bond, to the damage of decedent's creditors, intervening errors in rulings upon demurrers to the complaint, demurrers to the sufficiency of the several alleged breaches of the bond, and in overruling motions to make more specific, are not reversible. p. 395.

5. EVIDENCE.—*Purchase Price of Real Property.*—*Rents.*—*Personalty.*—*Administrators.*—*Bonds.*—In an action upon an administrator's bond, wherein the amount of money chargeable to the administrator was in issue, evidence that he received certain amounts due upon his decedent's executory contracts for the sale of real estate, which he applied to the payment of debts due from such decedent, is admissible, such sums constituting, when collected, a part of the personal estate. p. 396.

6. EXECUTORS AND ADMINISTRATORS.—*Payment of Debts.*—*General Fund from Personalty.*—*Special Fund from Real Estate.*—*Presumptions.*—The personal estate of a decedent being primarily liable for the payment of debts, the presumption is that the funds derived therefrom were used in the payment of such debts, before the special fund arising from the sale of real estate was resorted to. p. 397.

7. EXECUTORS AND ADMINISTRATORS.—*Personal Indebtedness to Estate.*—*Set-Off Against Service Account.*—Where an administrator pays his own debt, from the funds of decedent's estate, such administrator being insolvent, and decedent being his surety only, the court has the right in making such administrator's allowance for services, to set off said amount against the administrator's debt so paid. p. 398.

8. DECEDENTS' ESTATES.—*Distribution.*—*Debts from Heirs to Estate.*—*Set-Off.*—In distributing to the heirs the property of a decedent, any sums due from such heirs to such decedent will be set off against the distributive shares of such heirs. p. 399.

9. TRIAL.—*Special Findings.*—*General.*—*Specific.*—Where general special findings conflict with specific, the specific findings control. p. 400.

10. DECEDENTS' ESTATES.—*Sales of Real Estate.*—*Bonds.*—Where an administrator, who had given a general bond covering the

administration of the estate, as well as special bonds covering the sales of real estate to pay debts, fails to account for the moneys in his hands, and it is shown that he paid certain debts of said estate after receipt of money from the sale of real estate, the personalty having been exhausted, the sureties on the special bonds are entitled to a credit for such payments. p. 400.

11. APPEAL.—*Withdrawal of Decision.—Nunc Pro Tunc Entries.*— The Appellate Court has the power at any time during the term at which a decision was rendered to withdraw it from the files, and, if no entry has been made of such withdrawal, may order a *nunc pro tunc* entry thereof. p. 402.

From Boone Circuit Court; *Joseph Claybaugh,* Special Judge.

Action by The State of Indiana, on the relation of Robert J. Ferguson and others, against Jonathan J. Moore and others. From a judgment for plaintiff, defendants appeal. *Reversed.*

*Ira M. Sharp* and *Hawkins, Smith & Hawkins,* for appellants.

*B. F. Ratcliff, C. D. Orear, Charles M. Zion, Clodfelter & Fine, Dutch & Laughrun, Higgins & Holloman, Parr & Rogers* and *Samuel M. Ralston,* for appellee.

RABB, J.—On September 26, 1896, appellant Jonathan J. Moore was duly appointed by the Boone Circuit Court administrator of the estate of Willis Moore, deceased. The relators filed and were allowed claims against said estate amounting in the aggregate to $2,461.30, at the time this cause was tried in the court below. All of said claims were so allowed prior to February 16, 1898. The appellant, as such administrator, duly procured three separate orders for the sale of real estate, executing bonds as required by law upon the court's granting each order; the appellant American Surety Company of New York becoming surety on the first two bonds, and appellant American Trust Company of Lebanon, Indiana, becoming surety on the bond given in procuring the last order. Said last-mentioned appellant afterwards filing its petition to be released from such bond,

an order of court was made releasing said surety, and a new bond given by appellant Moore with appellant Bankers Surety Company of Cleveland, Ohio, as surety thereon. The first order of sale was procured at the September term, 1898, of the Boone Circuit Court, and the real estate sold thereunder for $1,673, all of which came into the administrator's hands prior to June 20, 1902. The second order of sale was made on October 10, 1898, and real estate thereafter sold by the administrator for $6,210.81, all of which was paid to him prior to October 1, 1901. The third order of sale was procured on May 31, 1902, and under this order the administrator realized $575, all of which was paid prior to February 16, 1903.

This action was brought on the relation of the creditors of the estate upon the several bonds given by appellant Moore, as such administrator, on procuring said orders to sell said real estate. The complaint is in four paragraphs, one being based on the bond given on procuring the first order; another on the bond given on procuring the second order; another on the bond given on procuring the third order and the substituted bond given on the release of the surety in the original bond; the fourth being a combination of all. Each paragraph of the complaint assigns numerous breaches of the bond sued on. Appellants Moore and American Surety Company of New York each filed motions to require the complaint and the breaches of the bond assigned to be made more specific, which motions were overruled and exceptions reserved. Each of the appellants filed separate demurrers to each paragraph of the complaint, and to each breach of the bond assigned in each paragraph of the complaint, which demurrers were overruled. Answers were filed and replies thereto, the cause submitted to the court for trial, a special finding of facts made, and conclusions of law stated thereon, to which each appellant severally reserved exceptions. Appellants' several motions for a *venire de novo* were overruled and exceptions reserved, and appel-

lants' several motions for a new trial overruled, and separate judgments rendered against appellants Moore and American Surety Company of New York on the first two bonds given, and against Moore and the other appellants severally upon the bonds executed by them. The Citizens Loan & Trust Company of Lebanon, on its petition showing that it had been duly appointed administrator *de bonis non* of the estate of said Willis Moore, deceased, was made a party defendant, and the sums collected on the judgment rendered by the court were directed to be paid to the clerk of the court, to be by him turned over to said administrator *de bonis non*, to be duly administered.

The only parties assigning errors here are appellants Moore and American Surety Company of New York. They assign as errors: (1) The overruling of their motion to require the complaint to be made more specific; (2) all the rulings of the court upon the several demurrers to the various paragraphs of the complaint, and the several assigned breaches of the bonds; (3) the conclusions of law stated by the court; (4) the overruling of their several motions for a *venire de novo*, and their motions for a new trial.

The pleadings in this case are complicated and very voluminous, and contain a vast amount of surplusage. The special findings are voluminous, and to take up the various questions that are raised in the briefs of counsel and pass upon each of them would be impracticable. The first and second paragraphs of the complaint aver with sufficient certainty and clearness the due appointment of appellant Moore as administrator of the estate of Willis Moore, deceased; the interest of the relators as creditors; the due execution of the bonds, and the proceedings by said administrator to sell the real estate; the orders for the sale of the real estate, and its sale under such orders; the receipt by the administrator of the proceeds of the sale; the fact that the personal assets of the estate were exhausted in paying the debts and liabilities of the estate, leaving the cred-

itors' claims unpaid, and leaving in the hands of the administrator funds derived from the sale of the real estate; the fact that all of the assets, real and personal, of the intestate were reduced to cash; that no claims were pending for allowance against the estate; that the court having jurisdiction of said administration had made an order that the administrator settle the estate and pay the balance on hands for distribution to creditors and heirs within ten days from June 25, 1904, requiring appellant Moore, as administrator aforesaid, to pay the balance of said estate in his hands into court within ten days; his failure to do so, and an order on June 27, 1904, removing him from his trust; a demand by the creditors upon said appellant for the payment of their claims, and that said appellant had neither complied with the order of the court nor paid the creditors' claims.

Among the breaches of the bond assigned in each paragraph is one averring the failure of appellant Moore to apply the money arising from the sale of the real estate to the payment of the judgments and claims of the relators. Another avers the failure of said appellant to comply with the order of the court requiring him to pay said moneys into court for their use. The special findings made by the court, while they contain a vast amount of mere evidentiary facts, find all the facts with reference to the appointment of the administrator, the orders of sale of real estate, the filing of the bonds, and the sale of the land and receipt of the purchase money as averred in the complaint, and that on May 25, 1903, the entire estate of appellant Moore's intestate had been reduced to cash; that no claims were pending for allowance against said estate; that the court then ordered the administrator to pay the costs of administration, and within ten days file his final settlement of said estate, and pay the balance remaining in his hands for distribution to the clerk of the court, to be applied to the payment of claims filed and allowed against the estate, and for distribution among the heirs entitled thereto; that the relators in this

case were then creditors of said estate, whose claims had previously been filed and allowed; that appellant Moore failed to comply with said order of court, or to pay the creditors' claims, and that he was afterwards removed by the proper order of the court from his trust as such administrator. The findings also show the amount of moneys received by the administrator from all sources, and the amount paid out by him on legitimate claims against the estate; and that he had in his hands, at the time of his removal, $3,183 belonging to said trust and derived from the sale of real estate.

We think that it is sufficiently shown by the findings that this fund, on hand when the order of the court was made upon the administrator to pay the same into court, was never paid to the creditors of the estate upon their claims, into court, nor to the appellant Moore's successor in said trust, and that the administrator sold real estate under the third order granted him, upon which he realized $575, for which there is no liability against the appellant American Surety Company of New York. There is a finding that $141.58 of the funds in the hands of the administrator arose from the sale of land under the last order of sale made. There is no question here made regarding either the misjoinder of parties, or of causes of action.

It is a contention of appellant Moore that the complaint and the special findings are insufficient to sustain the judgment against the appellants, for the reason that both fail to show any injury to the appellees 1. son that both fail to show any injury to the appellees by reason of the alleged defalcation on the bond; that they fail to show that appellant Moore has converted the assets of the estate to his own use, or that the appellees would be in anywise damaged by the alleged breach of the bond. We think this view cannot be sustained. The complaint alleges, and the special findings disclose, that appellant Moore, although having funds in his hands to apply in

payment of decedent's debts, neglected to make the application; that he failed for more than two years to comply with the order of the court to pay the balance in his hands into court for the use of the appellees and others entitled to the same, in compliance with the order removing him from his trust. It certainly can make no difference to the relators what appellant Moore did with the money belonging to the trust, which it was his duty to apply to the payment of the amounts due to them. Whether he put it in bank in his own name, subject to his personal check, or made a special deposit in his name as administrator, it was beyond their reach and could do them no good. It was not applied in payment of what the estate owed them, and so far as they were concerned he might just as well have invested the money in his private speculations as to put it in bank either in his own name or in the name of the estate. It was a plain violation of his duty, a plain breach of his bond, injuriously affecting the creditors of the estate, for this administrator to neglect or refuse to apply the money which he had received from the sale of these lands, made for the express purpose of paying the debts, to the payment

2. of their claims; and his withholding the same after his removal from his trust and the order of the court requiring him to pay the funds belonging to it into court amounted to a conversion, and gave the creditors the right to maintain this action; and the measure of their recovery is the amount of funds in the administrator's hands at the time the action was brought arising from the sale of real estate under the proceedings in which the bonds in suit were given, together with the interest and penalty provided by law in such cases.

The fact of the failure of the administrator, on demand made by the creditors, to apply the funds in his hands arising from the sale of the land in question to the pay-

3. ment of creditors, his failure to comply with the order of court requiring him to pay the funds into court,

are both well-assigned breaches of his bonds. The special findings made by the court sustained these charges, and the judgment rendered by the court is predicated solely upon them. These facts are clearly set forth in the special findings, and are sufficient upon which to predicate a judgment and warrant the action of the court in overruling appellant's motion for a *venire de novo*.

If the evidence is sufficient to warrant the findings, no reversible error intervened in the rulings of the court made upon the several motions to make the complaint more specific, or on the several demurrers to the complaint, and the various breaches of the bond assigned. While there is a special finding to the effect that on May 25, 1903, appellant Moore, as administrator, had in his hands, of assets of said estate derived from the sale of lands, the sum of $3,444.25, and that thereafter he paid out of said fund $261.25, leaving a balance of $3,183 unaccounted for, yet other special findings show that the total amount the administrator received of personalty from all sources was $2,083.66, and the total amount of cash received by him from the sale of lands made in said case was $8,468.02, making a total of $10,551.68 of gross receipts, from which the special findings show the administrator paid out, on legitimate charges and expenses against the estate, the sum of $7,434.78, which left a balance in his hands of $3,116.90. The special findings disclose that of the $7,434.78 of claims and liabilities of the estate paid by the administrator, $7,063.86 of the same was paid out of the personal estate and the funds derived from the sale of lands under the first two orders, and that $370.92 of the same was paid out of the funds arising from the sale of lands on all three orders; that at the time the lands were sold under the last order of court directing the sale of lands there remained in the hands of the administrator of the funds arising from sales under the first two orders, $2,812.82, and to this fund was added the funds arising from the last sale, $575, making

a total amount in the administrator's hands of $3,387.82; that these funds were commingled, and from them the $370.92 of liabilities against the estate paid.

The evidence shows that prior to the death of the intestate he had sold certain tracts of real estate to different parties upon written contracts of sale; that these contracts by their terms provided for the payment of the purchase price in monthly instalments, and upon the completion of the payment the purchaser was entitled to a deed of conveyance, and that in case of a failure on the part of the purchaser to comply with the terms of the contract the contract would become void, and the payments made under it should be treated as rent. Upon these contracts the administrator received from two of the parties holding the same the sum of $115.86, which the special findings show was received by the administrator, and by him applied in payment of debts against the estate before any lands were sold. The parties holding these contracts forfeited the same, released to the estate all their claims to the premises, and the lands were afterwards sold by the administrator to pay debts under one of the orders procured by him. There was also received by the administrator under these contracts the further sum of $1,028.65, from purchasers who did carry out their contracts, and in whom the legal title to the lands they had purchased was afterward perfected by proper proceedings for that purpose, but which proceedings were not had until after the lands had been sold by the administrator, and a large portion of the purchase money received, and until after a considerable portion of the debts had been paid. But the court found, and the evidence justified the finding, that all but $266.60 of the money so received by the administrator was by him applied in payment of the debts of the estate, and that $266.60 of said money was received by the administrator and by him intermingled with the funds arising from the sale of lands under the first two orders of the court.

It is earnestly contended by appellants that the court erred in admitting in evidence the receipt of said money by the administrator, or any evidence of its application to the payment of debts. It is insisted that the amount of money received from this source was not an asset in the hands of the administrator that could be legitimately or properly applied to the payment of debts; that it was from rents that went to the heirs, or at least that the $115.86 was from rents, and was not an asset of the estate, and that the $1,028.65 could not be regarded as an asset of the estate until the contract for the purchase of the property had been perfected. We think the appellants' contention in this respect cannot be sustained. The finding of the court, that the $115.86 was received by the administrator and applied to the payment of the debts before any lands were sold, would render it immaterial whether said amount was a legitimate asset of the estate or not, even though it belonged to the heirs and not to the administrator. The amount was, in fact, applied to the payment of debts, and satisfied the debts, and the debts it paid had no existence when the funds arising from the sale of lands came into the administrator's hands.

In the case of *Cooper* v. *Cooper* (1863), 21 Ind. 124, the Supreme Court decided that where a contract for the sale of land is made and the seller dies, and the sale is completed after death, the purchase money collected by the administrator becomes a part of the personal estate of the deceased. Under this authority, which we think applies here, the sums collected by appellant Moore, from parties holding contracts with his intestate for the sales of real estate which were perfected, were a part of the assets of the estate, and were properly applied by him to the payment of debts, and were primarily liable to be so applied.

The personal estate is the primary fund out of which

6. debts are to be paid, and in a contest between the sureties upon the general bond given by an adminis-

trator of an estate and the sureties upon the bond of such administrator given upon procuring an order for the sale of real estate, the sureties on the general bond would be entitled to insist that payments made by the administrator upon debts and legitimate expenses of administration should first be credited to his liability, before any part could be applied as credits to the fund arising from the sale of real estate.

In the case of Yost v. State, ex rel. (1881), 80 Ind. 350, the court said in reference to the liabilities of the sureties on the general bond of a guardian and his bond given upon the procuring of an order to sell real estate: "If the evidence of accounting fails to show of which fund the guardian was in default, the condition of each bond is broken to the extent of the defalcation, and the plaintiff was entitled to recover the whole sum of whichever set of bondsmen she should choose to sue." In this case we think the court was fully justified in finding that the liabilities of the estate paid out by the administrator were paid by him out of the fund derived from the personal estate, and not from that which was received by him from the real estate, and that the sureties on the real estate bonds are entitled to no credit on account of such payments, and for the purpose of showing the condition of the estate, and meeting the claims made by appellant American Surety Company of New York to credits as against the funds derived from the sale of real estate under the bonds they had executed, it was competent to prove the receipt of the money, its application to the payment of debts, and that it was intermingled with the real estate fund.

Another question is presented for our decision. It appears from the evidence and special findings that among the liabilities against said estate were obligations amounting to over $1,000 upon which the administrator himself was principal, and the intestate was surety, and that the administrator was wholly insolvent, and had no property out of which the debt could be paid. The court

made an order allowing appellant Moore $600 for his services, but providing that said sum should not be allowed as a credit to him in his account, but should be paid by him upon the indebtedness of the estate. It is claimed by said appellant that this was an error; that the court had no power or authority to make such an order, and that he and his sureties were entitled to a credit for the amount of said allowance against the sum in Moore's hands. Upon this question we think said appellant cannot be sustained. As between the estate and appellant Moore these debts were Moore's debts, and should be paid by him, and had he performed his duty as administrator, and paid the debts, and then come into court asking to be allowed as a credit on his accounts for the payment of the debt, and a credit also for his services, the court could clearly have set off as against any claim that was due him from the estate an amount of money equal to such claim that the estate had paid as his surety.

It has frequently been held, and never denied, that in the distribution of the estate of a decedent, any indebtedness due from an heir of the estate to the estate, may be 8.   set off against such heir's distributive share, and the fact that the money would be due to Moore, the administrator, on account of services rendered, would make no better case for him than if it were due him as an heir. If he were not the administrator, and owed the estate, and had a claim against the estate, it would be the duty of the court to require that a set-off be made between the demands, and we think this rule applies in this case, and that what the court did was substantially to set off the appellant's claim for services against his obligation to the estate, and nothing more. It was equitable, just and right that this should be done.

The special findings disclose that on June 13, 1903, the date at which appellant Moore filed his new bond under the third order to sell real estate, and released the sureties on

the original bond, appellant Moore then had in his hands, of the funds belonging to said trust, the sum of $1,900. The court, among numerous other findings, found that $78.08 of the principal of the balance remaining unaccounted for by said administrator came into the administrator's hands from the sale of real estate under the bonds executed by the American Trust Company of Lebanon, Indiana, and that $63.60 of the principal of the balance unaccounted for came into the hands of the administrator from the sale of real estate in the proceedings in which the Bankers Surety Company's bond was given. While these are findings made by the court, they are in effect conclusions from facts that are found, and show the exact amount of money that came into the administrator's hands from the sale of real estate under all of the orders of the court, and the sums that were paid out of the funds arising from these sales.

We think the special and specific findings, disclosing the amount of moneys received and the amount paid out by the administrator, are controlling, and override the conclusion of the court that but $78.08 and $63.60 remained in the administrator's hands of the funds arising from the sales made under the last order of the court. We think that, under the showing made, appellant American Surety Company of New York was entitled to have applied as a credit upon its liability eighty-three and one-half per cent of the $370.92 paid out by the administrator on just charges against said estate subsequently to the receipt by the administrator of the proceeds of the sale of lands made under the last order of court, and that the sureties upon the two bonds given to secure the proceeds of the last sale were entitled to be credited with sixteen and one-half per cent of said sum so paid out by the administrator, which would leave, on June 5, 1903, the date when the funds should have been paid into court, as found by the court, $2,603.10 due from appellant Moore and the

American Surety Company of New York, upon the first two bonds given for the sale of real estate, and $513.80 due from Moore and the sureties upon the two several bonds given on procuring the last order of sale, and that as between the sureties on the bonds given to procure the last order of sale, the sureties on the first bond, the American Trust Company of Lebanon, Indiana, was liable for $200.39, and the Bankers Surety Company of Cleveland, Ohio, was liable for $313.41, and upon these several sums the respective parties would be liable for six per cent interest and a penalty of ten per cent added thereto, as provided by the statute.

The court stated as its conclusions of law upon the findings made, that the plaintiff was entitled to a judgment against Jonathan J. Moore, as principal, for the sum of $3,984.97; that the plaintiff was entitled to a judgment against the American Surety Company of New York, as surety, for the sum of $3,810.64; that the plaintiff was entitled to a judgment against the American Trust Company of Lebanon, Indiana, as surety, for the sum of $95.43, and against the Bankers Surety Company of Cleveland, Ohio, for the sum of $78.90. Exceptions were reserved to these conclusions of law stated by the court. We think the court erred in its conclusions fixing the liability of these several sureties upon these bonds.

The judgment is reversed, with instructions to the court below to restate its conclusions of law in conformity with this decision.

Roby, C. J., not participating.

## On Petition for Rehearing.

Per Curiam.—Come now the appellants in the above-entitled cause, by Ira M. Sharp, and Hawkins, Smith & Hawkins, their attorneys, and come also the appellees herein, by P. H. Dutch, B. F. Ratcliff, and C. M. Zion, their attorneys, and appellants now, on motion, present their petition read-

ing in the words and figures following, to wit: [The petition asks that the opinion of the court heretofore rendered on appellants' petition for rehearing be restored to the files]. And appellees now present their written motion, among other things praying the dissolution of the restraining order heretofore granted.

And the court, being sufficiently advised in the premises, finds that on March 31, 1908, the appeal in this cause was decided by this court, and an opinion of the court rendered deciding all questions involved in the appeal, and a judgment rendered reversing the cause, with a mandate directing the court below to restate its conclusions of law to conform to the decision of this court; that on May 29, 1908, appellants filed their petition for a rehearing in said cause; that this petition was, on June 9, 1908, overruled by this court, and an opinion handed down, with the decision of the court overruling the petition; that afterwards, on July 1, 1908, and during the same term of court, said opinion was, by the order of this court, withdrawn from the files; but that by inadvertence and mistake no minute was made on the records of this court of the action of the court in withdrawing said opinion from the files.

It is now ordered by the court, upon its own motion, that the record of the court in this cause be corrected, and the clerk of this court is directed to make a *nunc pro tunc* entry in said record as of July 1, 1908, ordering that the opinion of the court upon the petition for rehearing in this cause be withdrawn from the files. And it is further ordered that the petition of appellants, asking that said opinion of the court aforesaid be restored to the files of the court, be, and the same is now, overruled. and the restraining order herein dissolved; and that appellees have judgment for the costs of this proceeding.

Roby J., does not participate in the making of this order.