FEDERAL UNION SURETY COMPANY ET AL. *v.* STATE, EX REL. POPP, GUARDIAN.

[No. 9,643. Filed October 18, 1918.]

1. INSANE PERSONS.—*Guardian's Report.—Suit to Set Aside.— —Pleading Breach.*—A complaint to set aside the final report of the guardian of an insane person, on the ground of the breach of a condition in the guardian's bond, need not allege the exact date of the breach, since the failure of the guardian to account in such report for all funds received is, from the time of the filing thereof, a breach of the bond for which the bondsmen are liable. p. 339.

2. INSANE PERSONS.—*Actions on Guardian's Bond.—Pleading.— Sufficiency.*—In an action on the bond of a guardian of an insane person, a complaint showing his appointment as guardian, the execution of the bond with condition that the guardian should faithfully administer the trust, the amount of money received, the filing of a final report which failed to account for a part of the money, the discharge of the guardian, and the conversion to his own use of the part unaccounted for, sufficiently alleges a breach of the bond as occurring at the time the report was filed. p. 340.

3. INSANE PERSONS.—*Action on Bond.—Sale of Realty.—Liabilities of Sureties on Sale Bond.*—Where the guardian of an insane person had given, in addition to his general bond, a bond for the sale of the ward's realty, and, in the discharge of his trust, he com-

Federal Union Surety Co. *v.* State, ex rel.—68 Ind. App. 337.

mingled the funds from the sale of the realty with other funds so that they could not be accurately separated, there could be a recovery either from the sureties on the general bond or from those on the bond to sell the realty.  p. 341.

From Clark Circuit Court; *James W. Fortune,* Judge.

Action by the State of Indiana, on the relation of Fred Popp, guardian, against the Federal Union Surety Company and others. From a judgment for the plaintiff, the defendants appeal. *Affirmed.*

*Burtt & Taggart,* for appellants.
*Burdette C. Lutz,* for appellee.

IBACH, J.—On December 28, 1900, Ephriam C. Martin was appointed guardian of the person and estate of Caroline Hoehn, a person of unsound mind, and on that day filed his bond for the faithful performance of his duties as such guardian with George W. Martin, Albert McKinley and Francis M. Brock as sureties. Thereafter, on May 12, 1905, said guardian filed his second general bond of $1,000 with appellant surety company as surety thereon. He continued to act in the capacity of guardian until September 28, 1908, when he filed his report in the clerk's office of the Clark Circuit Court, and resigned his trust, which report and resignation was duly accepted and he was discharged. On May 12, 1905, he was chargeable with the sum of $396.36 belonging to his ward, and on October 20, 1907, he had received the further sum of $300 in cash and a promissory note for a like amount. When Martin was discharged, Mary E. Todd was duly appointed his successor, and he delivered to her the $300 note and $308 in money. The court had allowed him $100.55 for his services and expenses.

This suit was then brought on the two general bonds mentioned to recover the amount of the estate which he had failed to surrender to his successor. The amended complaint is in three paragraphs. By the first it is sought to have the action of the court in approving the final guardian's report set aside. The second went out on demurrer, and the third seeks to recover from the sureties on the second general bond the amount of the alleged shortage. There was a trial by the court, a special finding of facts and conclusions of law, and finally a judgment on the conclusions of law against the appellant Federal Union Surety Company for $423.75.

The first and second assigned errors are that the court erred in overruling appellants' separate motions to make the first and third paragraphs of the complaint more specific. These motions asked that appellee be required to aver when the breach in the bond in each paragraph of the complaint occurred. It is also assigned as error that the court erred in each of its conclusions of law and in overruling appellants' motion for a new trial.

The first paragraph being a suit to set aside the guardian's final report, it was not essential to allege the exact date when the breach of the bond occurred. The rule in such cases is that, when the guardian files his report and fails to account therein for all funds received by him in that capacity, there is from that time a breach of his bond, for he has thereby failed to faithfully administer his trust and his bondsmen are liable. *Asher* v. *State, ex rel.* (1882), 88 Ind. 215, 222; *Slauter* v. *Favorite* (1886), 107 Ind. 291, 298, 4 N. E. 880, 57 Am. Rep. 106. The third paragraph of the amended complaint con-

tains material averments to the effect that Martin was duly appointed guardian for the insane person, the execution of the bond sued on, conditioned that he would faithfully administer his said trust, also the amount of money received by him after the execution of the bond, the fact of the filing of his final report in which he failed to account for a portion of the money received by him, and his discharge; then there is the concluding averment that he had converted to his own use so much of the estate unaccounted for. These averments are sufficient to show a breach of the bond and that such breach occurred when he filed his final report and was discharged as guardian. *Asher* v. *State, ex rel., supra; Shook* v. *State, ex rel.* (1876), 53 Ind. 403. In the case last cited the court said: "We think the allegation that the guardian converted the money * * * shows a breach of the bond."

The last assigned errors will be considered together. In addition to the facts already disclosed, the record shows that in the month of February, 1901, the guardian gave an additional bond to sell real estate, but none was sold, and no funds came into his hands from this source at that time. In April, 1902, he gave an additional bond to sell real estate, and received from such sale the sum of $300. On May 5, 1903, he filed his current report in which he claimed credits amounting to $175.24 and a balance on hand of $396.36. On June 5, 1905, the first general bondsmen were released by the court. On May 12, 1905, after the petition filed by the first general bondsmen to be released from their bond, Martin gave the new bond signed by the appellant surety company, and at that time in the verified report which

he filed, but which was not approved, he stated that he then had on hands $412.84, of which $114.74 was cash and the balance was in notes. Again on October 7, 1907, the guardian gave bond to sell real estate with appellant as his surety and, on October 20, he sold real estate for $600, receiving $300 in cash and a note for $300. When he resigned as guardian and was discharged, he delivered to the clerk of the court the $300 note and $308.11 in cash and was allowed for services and expenses $100.55, thereby accounting for $708.66, instead of $996.36, as shown by his own verified account and the amounts received from the subsequent sale of the real estate.

The court found, and it sufficiently appears from the record, that Martin had up to May 12, 1905, properly administered his trust, and at that time there had been no breach of his bond, but, if there could be any controversy over this proposition, there is ample evidence that the guardian commingled the different funds received by him while administering his trust so that they could not be accurately separated. Under such circumstances, there could be a recovery from either set of bondsmen. In the case of *Yost* v. *State, ex rel.* (1881), 80 Ind. 350, 354, the court said: "And if the evidence of accounting failed to show of which fund the guardian was in default, the condition of each bond was broken to the extent of each defalcation, and the plaintiff was entitled to recover the whole sum of whichever set of bondsmen she should choose to sue." This reasoning has been followed in a number of later cases, notably *Asher* v. *State, ex rel., supra,* and *Moore* v. *State, ex rel.* (1909), 43 Ind. App. 387, 398, 84 N. E. 161. In view of the facts in this case, there being no dispute over

the amount of the shortage, appellant cannot be harmed because it is surety on both the bond to sell real estate and on the last general bond.

Judgment affirmed.

NOTE.—Reported in 120 N. E. 425. See under (2-4) 22 Cyc. 1156, 1157.